378 So.2d 564 (1979)
Gene A. RICHARD, Sr., Plaintiff-Appellee,
v.
AMERICAN FEDERATION OF UNIONS LOCAL 102 et al., Defendants-Appellants.
No. 7287.
Court of Appeal of Louisiana, Third Circuit.
December 19, 1979.
*565 Lewis & Lewis, James C. Lopez, Opelousas, for defendant-appellant.
Lindsay & Seago, Glenn P. Marcel, Baton Rouge, for plaintiff-appellant.
Felix A. DeJean, III, and David L. Carriere, Opelousas, La., for plaintiff-appellee.
Before CULPEPPER, GUIDRY and YELVERTON, JJ.
YELVERTON, Judge.
Blue Cross of Louisiana (technically Louisiana Health Services and Indemnity Company, herein Blue Cross) and American Federation of Unions Local 102, Health and Welfare Fund, a trust (herein Local 102) appeal judgments granting medical benefits, penalties and attorney's fees under a group policy. Appellee, Gene A. Richard, Sr., was awarded medical benefits in the amount of $2,570.78 against Blue Cross, the insurer under the group policy. This judgment also awarded Richard penalties in the amount of $2,570.78, and attorney's fees in the amount of $2,500 for a total amount of $7,641.56. Judgment was also rendered in favor of Blue Cross, as a third party plaintiff, and against Local 102, as third party defendant, for an amount equal to the total for which Blue Cross was cast. We affirm the judgments, amending however, the award of statutory penalties.
The first issue raised by these appeals concerns coverage. Both appellants Blue Cross and Local 102 contend that the trial court erred in awarding Richard medical benefits. Appellants contend that Richard was not eligible for benefits and that therefore he was not covered under the group policy.
The second, third and fourth assignments of error raise the issues of whether Blue Cross is entitled to judgment in its third party demand against Local 102, whether penalties and attorney's fees are due Richard, and whether, if due, penalties are to be assessed under LSA-R.S. 22:657 or LSA-R.S. 22:658.
We will consider these four issues in the order presented.
*566 Coverage
On April 1, 1975, a health care contract was entered into between Blue Cross and Local 102 for the purpose of providing group medical benefits to union members and their families. The group policy limited eligibility for coverage to union members actively employed, that is, working on a job. There was no provision in the policy for a waiver of premiums for disability or any other reason.
Appellee Richard, who has a wife and three children, became a member of the union in September of 1975. In February of 1976 he was sent out on a job and he elected coverage under the group policy for himself and his family. Premiums were deducted by his employer and paid to Local 102 which in turn forwarded the premiums to Blue Cross.
In late April of 1976 Richard was injured and stopped working. He continued his insurance by paying his premiums out of his own pocket to Local 102. These premiums were accepted until October 21, 1976, when Richard was informed by the insurance administrator for the policyholder, Local 102, that the group insurance coverage could no longer be continued but that he had the privilege of converting to coverage on an individual basis.
At this point Richard enlisted his attorney's help to determine his and his family's insurance status. His attorney wrote Local 102's insurance administrator on October 25, 1976, inquiring as to whether there was a waiver of premium (for disability) under the policy. Getting no response from this letter, the attorney wrote again on November 5, 1976, explaining that plaintiff and his family needed the medical benefits and formally requesting a waiver of premiums. Still not getting any response, Richard's counsel wrote follow-up letters on January 3, 1977, February 25, 1977, and February 28, 1977. Finally, by letter dated March 1, 1977, a response came from the insurance administrator apologizing for the delay "in informing your office of the granted request for waiver of insurance premiums on Gene Richard" and declaring that "this request was granted in October" (meaning 1976).
Consistent with its action in granting the requested waiver of premiums effective in October of 1976, Local 102 honored certain claims for medical expenses on Richard's family. Claims presented between February 26, 1976 and January 13, 1977, were accepted by Local 102's insurance administrator, forwarded to Blue Cross for payment, along with a certification of eligibility, and actually paid by Blue Cross. Local 102 certified in its monthly eligibility reports to Blue Cross that Richard and his family were eligible for coverage, and the premiums it regularly forwarded to Blue Cross included those for Richard and his family. The premiums were paid not by Richard, but by Local 102.
Between March and July of 1977, Richard's family members incurred the medical expenses which are the subject of this lawsuit. These were submitted to Local 102 insurance officials for payment. These claims were denied by Local 102. The denial was expressed in a letter dated October 4, 1977 from the insurance administrator of Local 102 explaining that insurance officials had met on that date, discussed the records in detail, and concluded that neither Richard nor this family had been eligible for coverage since November 1, 1976, the date on which he could have converted to direct coverage with Blue Cross but did not.
The disputed medical expense claims were never actually presented to Blue Cross.
The above related facts are not significantly disputed. The appellants contend that at no time after November 1, 1976, was Richard eligible for insurance. They maintain that he was not eligible because he was not working, a condition for eligibility under the group contract. They support their argument with the observation that the group policy does not provide for a waiver of premiums. For these reasons they contend that there was no coverage and that Local 102 was correct in denying the claims.
In its written reasons for judgment the trial court stated:

*567 "The two chief defenses seem to be that the plaintiff was not eligible and the Union couldn't waive premiums. Whether the plaintiff was eligible or not the Union certified plaintiff and others,of doubtful eligibility by the terms of the policy as being eligible, and the insurance company accepted this, and payment. Whether the Union could waive premiums or not, it did and the insurance company was paid by the Union." (underscoring by the trial court.)
The trial judge concluded that Richard was in fact insured at the time the disputed medical expenses were incurred. We agree. Appellants have cited no law, and we believe there is none, which would require a different result on these facts. Local 102 was at all times herein acting as the agent of the insurer, Blue Cross. Woodard v. Prudential Insurance Company of America, 350 So.2d 948 (La.App. 2nd Cir. 1977); Mistric v. Republic National Life Insurance Company, 314 So.2d 472 (La.App. 1st Cir. 1975). An agent authorized to issue policies and other such actions on behalf of a company binds that company by all the waivers, representations or other acts within the scope of his business. Richard v. Springfield Fire & Marine Insurance Company, 114 La. 794, 38 So. 563 (1905); Neider v. Continental Assurance Company, 213 La. 621, 35 So.2d 237 (1948). See also McLain v. National Mutual Casualty Company, 28 So.2d 680 (La.App. 2nd Cir. 1946), where it was held that an insurer having issued a workmen's compensation insurance policy to an employer whose husband was on the payroll and after accepting premiums calculated on the basis of a payroll on which the name of the injured plaintiff-husband was included as an employee, could not avoid liability on the technical ground that the injured husband was not eligible for coverage as an employee because a wife cannot employ her husband.
We affirm the trial court's award of medical expenses against Blue Cross.
The Judgment Allowing Blue Cross to Recover Its Loss From Local 102
The trial judge found that Local 102 extended coverage to Richard by improperly certifying his eligibility to Blue Cross. He further found that Local 102 was the agent of Blue Cross. There is no manifest error in these findings.
The evidence supports the conclusion that, insofar as a determination of eligibility was concerned the relationship between the insurer, Blue Cross, and the policyholder, Local 102, was one of principal-agent. The definition of eligibility whereby only union members who were actually working could be covered, was a matter of contract spelled out in the April 1, 1975 health care contract between these parties. There was no written contract between them governing responsibilities for administrative details, including the ascertainment and the certification of eligibility. There was an understanding about these responsibilities, however, as revealed by the testimony of officials of both Local 102 and Blue Cross at the trial. This testimony indicates that it was Local 102's responsibility to certify its eligible members to Blue Cross. The latter made no independent determination of eligibility, relying entirely on the Local's certification. This certification was made in the form of eligibility reports (computer printouts) forwarded to Blue Cross by the Local along with the premiums due for the coverage as certified on the eligibility reports. The printed portion of each computer printout (programed to pick up only members of the union who were working, thus eligible) did not list plaintiff, but his name was added in handwriting by union officials at the end of the printout as a certification of his eligibility. These eligibility reports reflected that the coverage extended also to his family.
Richard's name was not the only one added by handwriting as an "adjustment" to the computer printout eligibility reports. There were others, notably union officers. There was evidence that the practice of adjusting these reports to add the names of union officers who were not employed on outside jobs and therefore technically ineligible, was done with the knowledge and consent of Blue Cross. Local 102 paid their *568 premiums, as it did Richard's. There is no evidence, however, that the practice of inserting the names of Local 102's members who were not officials as adjustments to the eligibility reports was ever known or consented to by Blue Cross. Thus, the forwarding of Richard's name with the certification that he was eligible for insurance was a clear violation of the written contract between the insurer and the policyholder.
The trial court further found this action bound Blue Cross. Had Blue Cross actually received these claims, it in all probability would have paid them as a matter of course, as it had done in the past, relying entirely on the eligibility reports and the receipt of matching premiums.
We agree with these conclusions and also with the finding that the ultimate fault lies with Local 102 in extending coverage in violation of known contractual prohibitions. It is settled law that where an insurer is exposed to liability for policy claims because of action by its agent beyond the agent's authority or contrary to instructions, the agent is accountable to the insurer for the latter's loss. American Fire & Marine Ins. Co. v. Seymour, 144 So. 775 (La.App. 2nd Cir. 1932); Millers Casualty Insurance Co. of Texas v. Cypress Insurance Agency, Inc., 273 So.2d 602 (La.App. 1st Cir. 1973); Atlas Lubricant Corporation v. Federal Insurance Co. of New Jersey, 293 So.2d 550 (La.App. 4th Cir. 1974).
Penalties and Attorney's Fees
We agree with the assessment of penalties and attorney's fees on the facts of this case. The actions of Local 102 in attempting to correct its mistake by an after the fact denial of coverage was arbitrary, capricious and without probable cause.
Blue Cross' contention that it cannot be held liable for penalties and attorney's fees because it was never presented the claims and never refused to pay them is without merit. Blue Cross as principal is bound by the acts of its agent.
Whether Penalties Are Determined Under LSA-R.S. 22:657 or R.S. 22:658
The trial court awarded penalties and attorney's fees under LSA-R.S. 22:657 which governs such awards when insurers fail to make timely payment of loss claims under health and accident policies. The policy in this case was not a health and accident policy but rather one which provided benefits only for hospital and medical care. Penalties should not have been assessed under LSA-R.S. 22:657. See Tabb v. La. Health Services & Indemnity Co., 361 So.2d 862 (La.1978) and Graham v. Equity Nat. Life Ins. Co., 373 So.2d 988 (La.App. 3rd Cir. 1979).
The proper statute under which these awards should have been based is LSA-R.S. 22:658. That statute provides for penalties of 12 percent on the total amount of the loss, together with reasonable attorney's fees.
No question has been raised in this appeal as to the reasonableness of the award of attorney's fees. We will amend the award of penalties, however, to 12 percent of the amount of the loss, as provided by the appropriate statute.
For the above reasons, the judgment of the trial court is amended to reduce the amount awarded as penalties to 12 percent of the medical benefits award. In all other respects, the judgment of the trial court is affirmed. Costs of the appeal are assessed to appellant Local 102.
AMENDED AND AFFIRMED.