427 So.2d 470 (1983)
Michael CHIASSON
v.
Roland WHITNEY, Jr., Horace Mann Insurance Company, Sentry Insurance Company, and the Louisiana Department of Transportation & Development.
No. 5-221.
Court of Appeal of Louisiana, Fifth Circuit.
January 10, 1983.
Rehearing Denied March 17, 1983.
*471 Stephen F. Griffith, Sr., Ltd., Destrehan, Stephen B. Murray, New Orleans, for Michael Chiasson, plaintiff-appellee.
Robert J. Young, Jr., Young, McMahon & Richaud, New Orleans, for Sentry Ins. Co., defendant-appellant.
Irving H. Koch, Nelson, Nelson & Koch, Ltd., New Orleans, for Roland Whitney, Jr., defendant-appellant.
Robert A. Vosbein and Mark C. Suprenant, New Orleans, for Louisiana Services of Norco, Inc. d/b/a Louisiana Ins. Service, Arthur L. Smith, and Equity General Ins. Co., defendants-appellants.
Jesse S. Guillot, New Orleans, for Louisiana Dept. of Transp. & Development.
Before BOUTALL, BOWES and CURRAULT, JJ.
BOUTALL, Judge.
This lawsuit arose out of a car-pedestrian accident on Highway 18 at the Taft-Norco Foot Ferry pedestrian crossing. From a judgment in favor of plaintiff, Michael Chiasson, Sentry Indemnity Company and the Louisiana Department of Transportation and Development have appealed. In addition, Sentry Indemnity Company has appealed from a summary judgment dismissing Sentry's third-party demand against Louisiana Insurance Services and Arthur L. Smith, and their insurer Equity General Insurance Company, and from a judgment dismissing Sentry's third-party demand against Roland Whitney, Jr. We affirm in part, reverse in part and remand.
Michael Chiasson, an eighteen-year-old apprentice carpenter was seriously injured on February 1, 1979, when a car driven by Roland Whitney, Jr., struck him as he crossed the highway to take the ferry across the Mississippi River. The van in which Chiasson had hitched a ride stopped on the highway at the crosswalk, letting Chiasson out on the passenger side. Chiasson walked behind the van and in front of other stopped vehicles and then proceeded across the highway toward the levee. An inattentive driver came upon the line of vehicles, realized that he was about to drive into them and moved into the other lane to avoid the cars, but in doing so he struck Chiasson with the left front section of his car. Chiasson was hurled some 35 feet, landing on a shelled area adjacent to the *472 road. He suffered a head injury and a fractured shoulder.
On July 12, 1979, Michael Chiasson filed suit against the driver, Roland Whitney, Jr., his insurer, Horace Mann Insurance Company, and Sentry Indemnity Company, the insurer of Chiasson's parents, seeking damages, including past and future loss of earnings.
Whitney pleaded the affirmative defense of poverty and carried liability insurance of only $5,000.00. Sentry was named defendant as carrier of Chiasson's parents' insurance in the hope of recovering under their uninsured or underinsured motorist coverage.
The parents' insurance policy, which included Michael as he was then living at home, provided for liability limits of $300,000.00 per accident, but uninsured or underinsured motorist's coverage of only $5,000/$10,000. Arthur Smith, the agent who placed the policy with Sentry, admitted having designated the lower limits and having an employee sign Harold Chiasson's name on the document waiving the $300,000.00 coverage to which the insureds were entitled under Louisiana R.S. 22:1406.
Sentry filed a third-party demand against Roland Whitney, Horace Mann Insurance Company, Louisiana Insurance Service (LIS), Arthur L. Smith, and Equity General Insurance Company seeking indemnification for any sum which it might be required to pay to the plaintiff.
Michael Chiasson filed a supplemental petition on January 31, 1980, adding the Louisiana Department of Transportation and Development as a defendant, alleging negligence in the design, construction, and maintenance of the pedestrian crossing. Also on that date the parents, Harold L. Chiasson, Jr., and Rosemary Chiasson, and Michael filed a separate suit against LIS, Arthur L. Smith, John Faucheaux, Sr., and Equity General, alleging negligence and/or fraud on their part in failing to inform the Chiassons of the lower uninsured motorist coverage and in forging Harold's name and submitting the coverage selection with lower limits. They sought payment for Michael's damages and their own mental anguish.
Horace Mann Insurance Company paid its policy limits of $5,000 and was dismissed on a motion for summary judgment on March 14, 1980.
The two lawsuits were consolidated but were severed on February 3, 1981, the first day of the trial. Also on February 3, 1981, a jury began hearing Michael Chiasson's case as to all defendants except the Department of Transportation and Development. The district judge heard the case against the Department in June, 1981. Just prior to the jury trial Chiasson dismissed his suit against Roland Whitney, reserving rights against all other defendants. At the end of the jury trial Sentry's third-party demand against Whitney was also dismissed on a directed verdict.
The jury found that Whitney was negligent and that his negligence was a legal cause of Chiasson's injury; that the plaintiff's damages amounted to $531,133.00, including future loss of $300,000.00 in wages; and that the Chiasson's policy with Sentry provided uninsured motorist coverage up to $300,000.00. After hearing the trial against the Department of Transportation and Development, in which the parties adopted the testimony brought out in the jury trial, the judge rendered judgment in favor of the plaintiff assessing damages of $526,133.00 ($531,133.00 minus the $5000 paid by Horace Mann Insurance Co.). On the judge trial he cast the State in judgment for $526,133.00, and on the jury verdict he rendered judgment of $309,132.90 against Sentry, but limited plaintiff's recovery to no more than the higher figure. The court adopted the jury's findings of fact as to defendants Whitney and Sentry, and found that the Department was negligent in designing, constructing, and maintaining the pedestrian crossing and was strictly liable under Louisiana Civil Code Article 2317.
After the Department and Sentry appealed, Roland Whitney filed a motion to dismiss the appeal as to the directed verdict in his favor on grounds of his having been discharged in bankruptcy.
*473 On this appeal the parties have argued the following issues: (1) Whether the Department is liable either on grounds of negligence or of strict liability under Louisiana Civil Code Article 2317; (2) whether the insurance contract should be reformed to provide uninsured motorist coverage equivalent to the limits of liability; (3) whether the court correctly dismissed Sentry's third-party claims against LIS, Arthur L. Smith, and Equity General Insurance Company and against Roland Whitney; (4) where there is a judgment against a solvent joint tort-feasor, and the other tort-feasor has been dismissed because of poverty, whether plaintiff's uninsured motorist insurer must pay part of the judgment and then seek reimbursement; (5) whether the award of $9,132.90 in medical expenses over and above the uninsured motorist insurance was correct; and (6) whether the award of $300,000 for future earnings is correct.
Negligence of Roland Whitney.
Roland Whitney admitted that he had bent down to look for a cigarette and consequently did not see that the cars ahead had stopped. He violated at least two motorist's statutes: LSA R.S. 32:58, failing to maintain control of a vehicle and LSA R.S. 32:77, driving on the left side of the roadway in a marked no passing zone.
As Whitney's negligence is without question, we agree with the jury's verdict that Whitney was negligent and that his negligence was a legal cause of the plaintiff's injuries. However we note that Whitney was voluntarily dismissed as a party defendant by plaintiff.
Liability of Department of Transportation & Development
The trial judge in his "Reasons for Judgment" cited the following "Findings of Fact by the Court":
"A.
"The Court finds that the Department of Highways was negligent in the design and construction of pedestrian crossing which was the site at which plaintiff's injuries occurred. The Department negligently failed to conduct an adequate engineering survey; it negligently failed to adequately sign and mark the crossing to provide adequate notice to motorists; it negligently failed to provide off highway loading and unloading zones; it negligently failed to adequately monitor the crossing after its installation to discover and correct the dangerous conditions referred to above.
B.
The Court finds that the pedestrian crossing at the Taft-Norco Foot Ferry was, on the date of plaintiff's injury, defective and unreasonably dangerous for its intended use by pedestrians and that the State is strictly liable therefor under the provisions of Louisiana Civil Code Article 2317."
We believe this portion of the judgment to be incorrect and reverse.
The record indicates that when the ferry opened, a pedestrian crossing sign was located opposite the shell path to the ferry landing. The speed limit on Highway # 18 was then 50 miles per hour. The St. Charles Parish Police Jury and the Sheriff requested a reduced speed limit and no passing signs after the ferry had been in operation a short time, calling the Department's attention to accidents at the ferry site. The Department's Chief Engineer made a report in November, 1976, and issued orders for a striped crosswalk, relocation of the pedestrian crossing signs to 150 feet in advance, double yellow lines establishing "no passing" zone, and a 35 miles per hour speed zone with appropriate signs. Boyd T. Gautreaux, the District Traffic Operation Engineer, testified that a detailed engineering study was not made at that time.
The plaintiff appellee asserts that in failing to conduct an engineering study before placing the cross walk, and in failing to place both an advance warning sign and a pedestrian crossing sign at the crosswalk itself the Department did not follow the recommendations of its own official manual and created a dangerous situation.
*474 The Department manual states the need for an engineering study and also the scope of its standards for state departments, as follows:
"The decision to use a particular device at a particular location should be made on the basis of an engineering study of the location. Thus, while this Manual provides standards for design and application of traffic control devices, the Manual is not a substitute for engineering judgment. It is the intent that the provisions of this Manual be standards for traffic control devices installation, but not a legal requirement for installation." U.S. Department of Transportation Federal Highway Administration, Uniform Traffic Control Devices for Streets and Highways, 1971, as amended September, 1976, page 5.
The manual notes that in its regulations the word "shall" is to be interpreted as mandatory, "should" as recommended but not mandatory, and "may" as permissible but not required. All the regulations cited by the plaintiff contain the words "should" or "may"; none are mandatory. We feel that the Department was in substantial compliance with the manual's standards. The manual does not recommend specific distances for placement of advance warning signs. However, the record does show that the Department did not provide an off-highway loading and unloading zone and did not monitor the site following installation of the traffic control devices.
The law regarding the duty of the Department of Transportation to travelers is well settled. As stated in Usry v. Louisiana Dept. of Highways, 402 So.2d 240 (La. App. 4th Cir.1981), at 245:
"It is the duty of this department to construct and maintain the highways in a condition reasonably safe for persons exercising ordinary care and reasonable prudence. The Department of Transportation is only liable when the evidence shows (1) that the hazardous condition complained of was patently or obviously dangerous to a reasonably careful and ordinarily prudent driver; and (2) that the department had notice, either actual or constructive, of the existence of the defect and failed within a reasonable time to correct it. U.S.F. & G. v. State, Dept. of Highways, 339 So.2d 780, 785 (La.1976); Doucet v. State Department of Highways, 309 So.2d 382 (3rd Cir.1975) writ denied 312 So.2d 340 (1975)."
We find that the evidence does not show the presence of an unusually dangerous situation at the ferry site. There is no uniform system of criteria for determining whether a crosswalk location on a highway is dangerous. The Department's own manual provides "warrants" for the installation of stop signs, yield signs, and traffic signals, based upon volume of vehicular and pedestrian traffic, gaps in vehicular traffic, accident history, etc. A traffic signal is deemed warranted when there are five or more accidents in a twelve month period, each accident involving personal injury and property damage of $100 or more, and when a specified volume of vehicular and pedestrian traffic is satisfied. The Department uses a computer system based on number of accidents to locate dangerous locations. There is no showing that the standards are unreasonable.
Two experts for the plaintiff, both experienced traffic engineers, testified that five accidents in ten months is a high frequency rate according to industry standards and that in their opinion the location was dangerous. The accident reports stipulated by counsel for both sides reveal that the only ten month period in which five accidents occurred was June 1, 1978 to February 1, 1979 and includes Chiasson's accident. The highest frequency is four accidents in the year 1978, although they occurred in the seven months between June 1, 1978 and December 12, 1978. The Department's one expert, Professor Olin K. Dart, Jr., testified that the occurrence of eight accidents between July 29, 1976 and December 12, 1978, averaging three per year, represented a fairly low accident rate. While an area for loading and unloading, along with changes in the sign locations, would be desirable according to good engineering practice, in *475 his opinion the crosswalk and signs at the time of the accident were reasonably safe for careful motorists and pedestrians.
Applying the law to the facts shown, either under a theory of negligence or of duty-risk, we cannot conclude that the Department is liable for this accident. It is not feasible to construct completely protected walkways at all pedestrian crossings. The warning measures here are adequate to protect a reasonably careful pedestrian from a reasonably careful driver. In this case it is apparent that this accident occurred because of an inattentive and reckless driver.
In Baumgartner v. State Farm Mutual Insurance Co., 356 So.2d 400 (La.1978) at 404, Justice Dixon of the Supreme Court said: "... a higher standard of care than that required of pedestrians is imposed upon the motorist commensurate with the hazards his conduct inflicts upon the public safety ..." Roland Whitney's careless operation of his vehicle was a clear violation of the minimum standard of care, and is gross negligence under the standard enunciated above. By his own testimony he bent down to find a fallen cigarette, even though he was aware of the pedestrian crossing, knew of the no-passing zone, had seen the warning signs, and had already reduced his speed. When he pulled into the left lane, Chiasson was crossing it and Whitney could not stop in time. Placing signs farther back or signals of different type would not have prevented this accident. The Department's duty to pedestrians does not extend to protection from grossly negligent motorists.
Because of our determination that the warning signs and highway markings were not so inadequate as to present a hazardous condition to a careful driver, we do not consider the issue whether the Department had notice of the "defect" and failed to correct it. We hold that plaintiff cannot recover under a theory of fault because of negligence or of duty-risk.
Now considering the issue of strict liability, for the plaintiff to recover from the Department of Transportation under Civil Code art. 2317 he must prove the following:
"... that the thing which caused the damage was in the care or custody of the defendant, that the thing had a vice or defectthat is that it occasioned an unreasonable risk of injury to anotherand that his injury was caused by the defect." Shipp v. City of Alexandria, 395 So.2d 727 (La.1981), at 728.
The discussion above also applies to the issue of the presence or not of a defective condition that caused an unreasonable risk. The plaintiff did not carry his burden of showing that the ferry crossing was defective in the absence of negligent drivers, and cannot recover under a theory of strict liability. Additionally, we point out that the arrangement of the crosswalk and warning signs was not the cause of Chiasson's injury; the negligent action of the driver of the vehicle was the cause. The accident would not have happened if Whitney had been attending to his driving.
Accordingly, we hold that the Department of Highways is not liable to plaintiff for his damages and we reverse the judgment rendered against it.
Liability of Sentry Indemnity Company
Sentry, the Chiassons' insurer, assigns seven errors, among them the complaint that the trial court erred in reforming the Chiassons' insurance contract to provide uninsured motorist coverage of $300,000 instead of $5,000/$10,000. It reasons that the selection form showing lower limits was valid, as it was signed by the Chiassons' agent, a L.I.S. employee. No jurisprudence is cited to show that the court could not reform the contract. To the contrary, the provisions of the insurance law reform the contract. R.S. 22:1406 D specifically provides that this policy is governed by the provision that no policy shall provide uninsured motorist coverage in less than the limits of bodily injury liability provided by the policy unless the insured shall reject in writing the coverage or selects lower limits. We agree with the trial court's finding that the Chiassons had $300,000 in uninsured motorist coverage. Accordingly, we affirm this portion of the judgment.
*476 Uninsured motorist coverage, unless rejected by the insured, has been mandated by statute in Louisiana since 1962. The Supreme Court in A.I.U. Insurance Company v. Roberts, 404 So.2d 948 (La.1981), found uninsured motorist coverage in the amount of the policy's liability limits in a situation where the plaintiff verbally selected lower limits but did not consent in writing. The court referred to R.S. 22:628, the general insurance law, providing that any agreement modifying a contract must be in writing and attached to the policy. The facts of that case took place before Act 438 of 1977 (R.S. 22:1406 D(1)(a)) was enacted, which specifically provided that unless the insured rejects in writing uninsured motorist coverage or selects lower limits coverage equal in amount to that of bodily injury the amount of liability coverage shall apply. Similar facts in International Insurance Co. v. Masur, 404 So.2d 1313 (La.App. 2d Cir. 1981), brought about a decision in favor of the insured. In that case, testimony indicated that detailed proposals for the policy had been discussed with the insurance agent and lower limits selected. The uninsured motorist selection form was not signed before the policy was delivered through an oversight, and Masur was injured in the meantime. The court found that there was no written selection of lower limits, hence the statutory limit applied.
The facts of Page v. American Motorist Ins. Co., 381 So.2d 889 (La.App. 2d Cir.1980) are similar to those of the instant case. The insured asserted that he had chosen full uninsured motorist coverage and that he signed a blank application which the insurance agent later completed with an express rejection of uninsured coverage. The agent denied having had the insured sign before the application was filled in and further alleged that the insured had discussed the application in detail and accepted his recommendation to reject uninsured motorist coverage. The court reversed a summary judgment, finding that genuine issues of fact existed as to whether or not the agent had actual authority to reject uninsured motorist coverage for the insured. In the instant case, the Chiassons insist that they were unaware of uninsured motorist coverage, were given no information as to choices, and specifically did not authorize the insurance agent to sign the waiver for them. Under A.I.U. Insurance Company v. Roberts, above, the trial court's decision is correct.
Sentry assigns as error the court's admitting testimony by the Chiassons as to whether they would have selected higher coverage, given the opportunity. The company argues that Paragraph 10 of the petition in "Harold Chiasson, Rosemary Chiasson and Michael Chiasson v. Louisiana Services of Norco, et al," number 21,292, amounts to a judicial confession of the plaintiffs that they had uninsured motorist coverage of $5,000/$10,000. Because the judicial confession is an admission, plaintiff has waived evidence as to the subject of the admission. Crawford v. Deshotels, 359 So.2d 118 (La.1978). L.I.S., Arthur L. Smith, et al, do not respond to this error in their brief. Plaintiffs point out that all counsel agreed that the second suit would be severed and deferred, pending the outcome of the first suit. Plaintiffs argue that Sentry cannot now rely upon allegations in the second suit to avoid liability. As Smith admits he did not ask the Chiassons to sign the selection form and had an employee do so in their stead, a valid selection was not made. It is not necessary for this court to decide upon the issue of admissibility of the Chiassons' testimony, because even without it the verdict of the jury would be the correct one under the current jurisprudence.
Liability of L.I.S., Arthur L. Smith, and Equity General Insurance Company.
Sentry appeals the dismissal by summary judgment of its third-party claim against the agent, Arthur L. Smith, his agency, and the carrier of his errors and omissions liability insurance. The claim is for indemnification of any payment it must make to the insured that results from Smith's acting outside his authority and contrary to instructions. We reverse the grant of summary judgment and remand for further proceedings on the issue of the third party defendant liability to Sentry.
*477 The motions for summary judgment were taken up prior to trial on the merits, and a timely appeal was taken. As a result of the rulings made on that day (Feb. 3, 1981) these three third-party defendants were dismissed from the suit and did not participate in the jury trial. The trial judge based his ruling on a question of law, i.e., that the liability of the insurance agent, et al., was limited to recovery of premium not the loss suffered by the insurance carrier. There is no serious dispute as to most of the facts, but there is a serious dispute as to facts leading to the signing of the waiver of coverage attached to the policy.
Because we have before us only an appeal from summary judgment we do not propose to make a ruling as to the testimony elicited on trial particularly with no examination of witnesses or other evidence produced by these parties' attorneys.
The liability of the insurance agent, Smith, and his agency arise out of a written waiver of uninsured motorist coverage which was signed, not by the policy holder, but by an employee of the agency. It is Agent Smith's testimony that Mrs. Chiasson told him she wanted a policy with the same coverage ($300,000 liability but only $5000 uninsured motorist coverage) as her expiring Prudential policy but at a lower premium. He had his employee sign the document as a convenience to save Mrs. Chiasson another trip. The Chiassons dispute this, raising the issue that signing Mrs. Chiasson's name was not authorized and that the signature is a forgery. Sentry asserts that, but for Smith's failing to have Mr. and Mrs. Chiasson sign, the $5,000/$10,000 limits, the coverage provided by their previous policy, would have been in effect. By acting in a manner contrary to the Sentry agent's manual's requirement that the applicant must sign the application, Smith exposed Sentry to a $295,000 loss.
Sentry cited Richard v. Am. Federation of Unions, Local 102, 378 So.2d 564 (La.App. 3rd Cir.1979) as an expression of the current law on an insurance agent's liability to his insurer:
"It is settled law that where an insurer is exposed to liability for policy claims because of action by its agent beyond the agent's authority or contrary to instructions, the agent is accountable to the insurer for the latter's loss. American Fire and Marine Ins. Co. v. Seymour, 144 So. 775 (La.App. 2d Cir.1932); Miller Casualty Insurance Co. of Texas v. Cypress Insurance Agency, Inc., 273 So.2d 602 (La.App. 1st Cir.1973); Atlas Lubricant Corporation v. Federal Insurance Co. of New Jersey, 293 So.2d 550 (La.App. 4th Cir.1974)."
Richard, above, at 568.
The agent in Richard clearly acted beyond his authority by certifying to the insurer as eligible for health insurance a worker who was not then working and by waiving premiums and having the union pay them. As a consequence the insurer was liable for medical payments to an ineligible worker.
In Millers Cas. Ins. Co. of Texas v. Cypress Ins. Agcy, Inc., 273 So.3d 602 (La.App. 1st Cir.1973), the agent's offense was back-dating a policy in order to cover a medical claim, where the insurer had initially refused to write coverage until the applicant company had complied with some prerequisites. Although the insurer did eventually write the insurance, the agent's back-dating the policy in violation of Millers' manual for agents subjected the insurer to a claim for which it would not have been liable otherwise.
In both Richard and Millers the court found the agent accountable for the insurer's loss. Appellee Smith argues that the agent is liable only if he has exposed the insurer to a risk which it did not intend to assume. Smith reasons that he did not cause the insurer's loss as he had the authority to bind Sentry to the statutory limit of uninsured motorist coverage and customarily did so. He assumes that the Chiassons would have opted the $300,000 limits available to them under the law, had they been asked to sign the election form. Smith's reasoning is contrary to the holding in Millers, where the insurer's later assumption of *478 coverage did not enter into the court's finding that the insurer had undertaken an unintended risk and suffered loss because of the agent's back-dating the policy.
Smith relies on Mathews v. Marquette Cas. Co., 152 So.2d 577 (La.App. 2d Cir.1963, cert. refused, 244 La. 662, 153 So.2d 880 (La.1963)) as support for his argument. The agent in Mathews failed to notify the insurer of an additional vehicle to be covered by a policy in force. The court found that the agent had not harmed the insurer, as it would have had the same loss regardless of notice. This decision has not been followed by the Louisiana courts. Decisions from other jurisdictions that are in accord with Mathews concern agents' inadvertent errors or omissions rather than the affirmative acts of wrong-doing of Millers, Richard, and the instant case.
The law states in no uncertain terms that an automobile liability insurance policy must provide coverage "in not less than the limits of bodily injury liability provided by the policy ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits." LSA R.S. 22:1406D(1)(a), as amended (emphasis supplied). The statute was amended by Acts, 1977, No. 438, Section 1 to include the words "in writing." The courts must not condone any exceptions to the plain requirements of the law. Smith's signing Chiasson's name was an intentional and a serious infraction causing his principal to be liable in judgment for an extra $295,000.
We reiterate that we have considered the testimony and evidence produced only insofar as it applies to the liability of Sentry. Because third party defendants Smith, LIS, and Equity General Insurance Company were dismissed prior to trial by summary judgment, there was no trial of the issues raised by Sentry's third party demand against them and it is necessary to remand Sentry's third party demand for trial or such further proceedings as may be proper.
Sentry's Third-party Claim against Roland Whitney.
At the beginning of the trial, the plaintiff voluntarily dismissed his suit against Roland Whitney without giving reasons, but reserved his right to proceed against Sentry. Whitney's main defense was poverty, and he was kept in the case by Sentry's third party demand against him. At the conclusion of the jury trial Whitney moved for a directed verdict dismissing Sentry's third party claim against him. Whitney argued that as the plaintiff's rights against Whitney were extinguished, then Sentry's rights were also extinguished; because the insurer can have no greater rights than its insured. The trial judge granted the directed verdict in favor of Whitney without giving reasons.
In presenting the motion for directed verdict, Whitney mainly based his position on the case of Niemann v. Travelers Ins. Co., 368 So.2d 1003 (La.1979). In opposition Sentry urges the principles announced in Bond v. Commercial Union Assur. Co., 407 So.2d 401 (La.1981) (on rehearing) and the general articles on subrogation in the La. Civil Code. To this we add the provisions of L.R.S. 22:1406(D)(4), which seems to grant an independent right of recovery, and the recent case of Pace v. Cage, 419 So.2d 443 (La.1982).
However under the facts of our case we do not reach a decision on the trial court's ruling because it would simply be dicta. While this appeal was pending, Whitney applied for and received a discharge in bankruptcy in the U.S. District Court for the Eastern District of Louisiana. He then filed a motion to dismiss the proceedings against him. The fact of his discharge is not disputed and we grant the motion to dismiss. It would be a futile gesture to keep him in these proceedings. The issue of the directed verdict is now moot.

*479 Award of Medical Expenses, Stacking Payments.

The court awarded $13,179.15, minus a credit of $4,046.25 previously paid by Sentry, for stipulated medical bills. It found that the policy provided $5,000 per automobile for medical expenses, totalling $15,000 for the Chiassons' three automobiles.
The limit of liability on the face sheet of the policy reads, "Medical Expense, Each Person $5,000." Separate premium charges are listed for each of three cars. Chiasson contends that he had in effect three medical insurance policies and should have received the benefit of all three coverages. His authority is Easley v. Firemen's Ins. Co. of Newark, N.J., 372 So.2d 1067 (La.App. 3rd Cir.1979), where medical coverage was allowed for a plaintiff-pedestrian who insured two automobiles under one policy.
We disagree with the court's finding of $15,000 coverage; accordingly, we amend the judgment to allow only $5,000 in medical payments.
Easley allowed stacking because of a conflict between the policy provisions that related to limit of liability and insurance of two or more automobiles. The facts in Easley differ from those of the instant case in that the policy contains no ambiguity as to stacking:
"Limits of Medical Expense Insurance.
"Regardless of the number of cars we insure under this policy, the limit of medical expense insurance is the amount shown on the declarations page for `each person' ..." Your Plain Talk Car Policy, Sentry Indemnity Company at 8.
In Bourgeois v. Government Employees Insurance Co., 316 So.2d 804 (La.App. 1st Cir.1975), a liability limit statement with the same provisions as those of Sentry's precluded the plaintiff from stacking medical payments on two vehicles, where he was riding on a non-insured motorcycle. In the most recent case of Branch v. O'Brien, 396 So.2d 1372 (La.App. 2d Cir.1981), where stacking payments of several policies are denied, the court said, at 1377:
"There is no statutory or policy requirement relating to medical payment coverage which overrides or negates the express provisions of the policies, which should be given effect as written..."
We know of no statutory authority that requires stacking to be mandatory nor policy provisions that disallow stacking to be illegal. Accordingly, we interpret the policy to be limited as it clearly states, and Chiasson's medical expense payment under the policy should be limited to $5,000, the expense for one person each accident. Because it was stipulated that Sentry had already paid $4,046.25 under the medical payment portion of its policy, Sentry's liability under this coverage now amounts to the difference only: $953.75.

Award of $300,000 for Future Wage Losses.
The jury returned a verdict that plaintiff's damages totalled $531,133 itemized as follows: Medical expenses $9,133; loss of wages to present $12,000; future loss of wages $300,000; past physical and mental suffering $50,000; future physical and mental suffering $10,000; permanent disability $150,000. Appellant Sentry contests only the future loss of wages of $300,000.
The basis of Sentry's contention is that Chiasson, for 16 months prior to trial was gainfully employed as a member of the local Carpenter's union, and, although admittedly not performing the same job duties as prior to the accident, he was earning a salary equal to that earned prior. Sentry reasons that any future wage loss is only speculative and should not be awarded, citing Lou-Con, Inc. v. Gulf Building Services, Inc., 287 So.2d 192 (La.App. 4th Cir. 1973).
The proper measure for determining future loss earnings is stated in Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1976), Rehearing denied January 12, 1977, at page 338:
"But the full indemnification to which an injured party is entitled under Article 2315 (Jordan v. Travelers Insurance Co., 257 La. 995, 245 So.2d 151 (1971) includes *480 damages for decreased earning capacity which is determined by deducting plaintiff's earning ability after the injury from his earning ability immediately prior to the injury rather than by deducting his income after the injury from the income prior to the injury. The Court of Appeal on original hearing emphatically rejected defendant's argument and said:
`Wages at time of inquiry are usually suggestive of the individual's future earnings. This is not an absolute unvarying rule. In many instances, changes in work and increase of earnings would be more probable. The law does not destine an injured party to his situation at the time of injury. It would be unrealistic and unjust to accept defendant's argument. In Edwards v. Sims, 294 So.2d 611 (La.App., 4th Cir., 1974) it was said:
"... Moreover, loss of wages can properly be computed on the amount the plaintiff would in reasonable probability have been earning at time of trial, although he was earning less at the time of the accident. James v. State, 154 So.2d 497 (La.App., 4th Cir. 1963)."' 330 So.2d at 666."
This exact same reasoning was followed in the case of Mizell v. State through La. Dept. of Hwys., 398 So.2d 1136 (La.App. 1st Cir.1980, on rehearing March 2, 1981) in which the court held at 1145:
"... The measure of lost earnings is not the amount actually earned at the time of injury; rather, it is the amount of the earning capacity. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976)..."
In order to prove loss of earning capacity plaintiff produced as witnesses: Gerald Gulotta, a member of the Examining Committee of the Carpenter's Local of New Orleans; Susan Smith, an expert in the field of vocational placement for handicapped persons; several medical doctors, co-workers and friends; all of whom, in brief, show Chiasson as an able, capable and energetic person with no handicaps facing a career as a successful construction carpenter prior to his injuries, but who cannot return to work as a journeyman carpenter because of the handicaps he is faced with. We have no hesitancy in agreeing with the jury's verdict and do not feel that appellant's argument merits detailed listing of the abundant support for the verdict.
Interest.
The last issue raised is the award of legal interest in the judgment against Sentry from date of judicial demand. Sentry contends that its obligation towards Chiasson is a conventional obligation, and, relying on the case of Guidroz v. Tauzin, 413 So.2d 682 (La.App. 3rd Cir.1982) that interest should be ordered paid only from the date of judgment. We disagree and affirm the award of interest from date of judicial demand.
In the recent case of Hoefly v. Government Employees Insurance Co., 418 So.2d 575 (La.1982) the Louisiana Supreme Court has held that the law imposes an obligation in solido on the part of the tort feasor and the uninsured motorist carrier, both being obliged to the same thing, repair the damage to the victim. The court stated at 418 So.2d 578:
"The tortfeasor and the uninsured motorist carrier are obliged to the same thing. A tortfeasor is obliged to repair the damage that he wrongfully caused to the innocent automobile accident victim. La.C.C. art. 2315. Subject to conditions not granted the tortfeasor, the uninsured motorist carrier is independently obliged to repair the same damage. By effect of the uninsured motorist statute, La.R.S. 22:1406(D)(1)(a), and its insuring agreement, the plaintiff's uninsured motorist carrier is required to pay, subject to statutory and policy conditions, amounts which they are entitled under other provisions of law to recover as damages from owners or operators of uninsured or underinsured motor vehicles. By effect of law and the terms of the insuring agreement, therefore, both the uninsured motorist carrier and the tortfeasor are obliged to the same thing."
Additionally, at page 580, the court concluded:

*481 "[6] The solidary obligation in the present case results primarily from provisions of law, viz., the general rules of delictual responsibility, La.C.C. arts. 2315, et seq., and the uninsured motorist statute, La.R.S. 22:1406(D). Although an insurer must deliver or issue for delivery automobile liability insurance in order to be bound, the basic ingredients of the obligation are provided and required by law. Under these circumstances, the obligation is solidary by operation of law, without requiring an express declaration."
Similarly, both the statutory law and the policy in our case require the carrier to pay the damages suffered. The policy describes these damages as "the cost of compensating those who suffer bodily injury." The statutory law L.R.S. 13:4203 provides that legal interest shall attach from date of judicial demand on all judgments sounding in damages ex delicto. In Merchant v. Montgomery Ward & Company, Inc., 83 So.2d 920 (La.App. 1st Cir.1955), the court characterized legal interest as follows:
"Statutory interest allowed on judgments or on legal claims as a result of judgment is in the nature of statutory damages for withholding use of the money awarded from the judgment creditor; 15 Am.Jur. 577-581, Verbo `Damages', Sections 159-163, 30 Am.Jur. 23, Verbo `interest', Section 29."
Accordingly we conclude that the obligation to pay damages is the same and that obligation carries legal interest from date of demand. We note the cases of Hebert v. Ordoyne, 388 So.2d 407, (La.App. 1st Cir. 1980) and Powell v. Allstate Insurance Co., 233 So.2d 38 (La.App. 2nd Cir.1970) in support of this result.

Costs
Finally we note that because of the result we reach, we will have to adjust the decree concerning assessment of costs.

Decree
As to the judgment of July 22, 1981, on the main demand, we reverse the judgment in favor of plaintiff, Michael Chiasson against the defendant Louisiana Department of Transportation and Development, and we now render judgment in favor of Louisiana Department of Transportation and Development dismissing plaintiff's suit against it at plaintiff's costs.
Further we affirm the judgment in favor of Michael Chiasson against defendant Sentry Indemnity Company but we award the amount due under the medical payment coverage, and we now render judgment in favor of Michael Chiasson against Sentry Indemnity in the full sum of $300,953.75, with legal interest from date of judicial demand until paid, and for payment of all costs except those attributable to the suit against the Louisiana Department of Transportation and Development.
As to the summary judgment of February 6, 1981 in favor of third party defendants, Louisiana Services of Norco, Inc., d/b/a Louisiana Insurance Service, Arthur L. Smith, and Equity General Insurance Company dismissing the third party demand of Sentry Indemnity Company, we reverse and set aside that judgment and render judgment in favor of Sentry Indemnity Company dismissing that motion for summary judgment against it. We remand Sentry's third party demand against these parties for trial on the merits or such other proceedings as may be appropriate.
As to the directed verdict of February 13, 1981, in favor of Roland Whitney, Jr., dismissing the third party demand of Sentry Indemnity Company, we declare the issue to be moot and we grant the motion to dismiss Sentry's appeal of the directed verdict.
REVERSED IN PART, AFFIRMED IN PART.