United States Court of Appeals,

Fifth Circuit.

No. 91–3616.

CONTINENTAL CASUALTY COMPANY, Plaintiff–Appellant,

v.

RIVER RIDGE INSURANCE, INC., et al., Defendants–Appellees.

Sept. 30, 1992.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before WISDOM, SMITH, and EMILIO M. GARZA, Circuit Judges:

WISDOM, Circuit Judge:

In this case, the district court dismissed the plaintiff's complaint on the ground that the plaintiff had failed to meet its burden of proof of proximate cause. The plaintiff appeals, asserting that the legal standard applied by the district court was incorrect and that the factual determinations of that court were clearly erroneous. We hold that the legal standard applied by the district court was the appropriate one, and that the factual findings of the court were not clearly erroneous. We affirm.

I. BASIC FACTS.

The defendant/appellee, River Ridge Insurance Agency ("River Ridge"), was a local insurance agent for the plaintiff/appellant, Continental Casualty Company ("CNA"), from January 1, 1984 until November 30, 1987. CNA gave River Ridge the authority to issue insurance binders as follows:

**Maximum Limits of Liability Which May Be Bound**

1. For any Liability Coverage    $1,000,000

2. For any Property Coverage [*]   $ 250,000

[*] Except for eligible Business Account Program risks (other than frame)    $ 500,000

One of the property coverage policies that CNA offered was the Business Account Program ("BAP"). The BAP policy had a lower premium than other CNA commercial property policies, and

had several restrictions not applicable to other CNA policies. These restrictions included a requirement that the building be less than 20 years old, unless certain parts of the structure had been renovated within the past five years, and a requirement that the usable area of the building be less than 10,000 square feet. For businesses that did not qualify for the BAP policy, CNA offered several other types of commercial property policies which were not subject to the restrictions applicable to the BAP policy.

On November 6, 1987, an employee of River Ridge issued an insurance binder covering the St. Claude Super Market under the BAP policy. The binder included two separate property coverages—one covering the structure for $300,000, the other covering the contents for $250,000.

On December 24, 1987, the St. Claude Super Market burned virtually to the ground. CNA had not yet issued a policy, but the risk was under binder pending an underwriting conclusion. CNA determined that the structure and contents were a total loss and ultimately paid to the insured the policy limits of $300,000 for the structure and $250,000 for the contents, as well as $8,910.75 for business interruption losses. CNA then brought this suit alleging that River Ridge had bound this risk in violation of limitations on its binding authority. CNA further alleged that, but for River Ridge exceeding its binding authority, CNA would not have suffered the loss.

After trial to the court, the district court found that River Ridge was an agent of CNA and that River Ridge did exceed its binding authority under the BAP, because the St. Claude Super Market did not meet the policy requirements with regard to age and size. The court then determined, however, that CNA had not established that this breach by River Ridge proximately caused CNA's loss. The court found that CNA would have issued some form of policy to cover the risk. The court therefore entered judgment dismissing CNA's complaint.

On appeal CNA contends that the district court clearly erred in finding that CNA's loss was

not proximately caused by River Ridge's breach of duty because CNA would have issued a policy to insure the premises. CNA also challenges the legal standard under which the court made this determination. In the alternative, CNA asserts that River Ridge is liable for any sums paid by CNA is excess of $250,000 regardless of the outcome on the first issue, because $250,000 was the maximum coverage River Ridge was authorized to bind.

## II. PROXIMATE CAUSE.

A. The legal standard.

The district court placed the burden of proving proximate cause on the plaintiff, relying on two Louisiana cases, *Mathews v. Marquette Casualty Co.*[1] and *Medical Arts Pharmacy v. Rabun,*[2] for this standard. The courts in these cases held that although an agent had breached a duty to the insurer, the insurer had failed to prove that its loss was caused by the breach because it had failed to prove that it would not have insured the risk anyway.

In *Mathews,* a Louisiana court denied an insurer's claim against an insurance agency for damages the insurer paid as a result of an automobile accident. The agent failed to give notice to the insurer that it extended coverage on an automobile acquired by the insured during the term of the policy. Although the court agreed that the agent had breached a duty to the insurer by failing to give notice, the court concluded that the insurer had not shown that it would not have insured the vehicle if it had been notified. The court therefore reasoned that the breach by the agent was not the cause of the damage; the insurer failed to prove that it would not have suffered the same loss had no breach occurred.[3]

In *Medical Arts Pharmacy,* a Louisiana court similarly ruled that an insurer's claim against

---

[1]152 So.2d 577 (La.App. 2d Cir.), *writ denied,* 244 La. 662, 153 So.2d 880 (1963).

[2]517 So.2d 480 (La.App. 1st Cir.1987), *writ denied,* 519 So.2d 149 (La.1988).

[3]*Mathews,* 152 So.2d at 584–585.

its agent was defeated because the insurer did not present sufficient evidence to show that it would not have insured the risk had the agent not breached a duty. Lacking such evidence, the court concluded that the breach was not the cause of the insurer's loss.

CNA argues that the standard established in these cases should not have been applied in the case at hand. CNA relies on *Chiasson v. Whitney*[4] to support this assertion. CNA contends that *Chiasson* establishes a legal standard different from that of *Mathews* and casts doubt on the validity of the proposition that an insurer seeking to recover from its agent for a breach of duty bears the burden of proving proximate cause. We disagree. Examination of *Chiasson* reveals no departure from the proposition established by *Mathews.*

In *Chiasson,* the insured purchased an automobile insurance policy, providing for $300,000 in liability coverage, but providing only $5000 per person in uninsured motorist coverage. At that time, Louisiana law required uninsured motorist coverage to equal liability coverage, absent a valid waiver by the insured. Rather than have the insured sign this waiver, the agent forged the signature of the insured. Later, the insured's covered son was injured in an automobile accident. He filed suit against a number of parties, including the uninsured motorist carrier. Because the insured had not signed the waiver, the court held that there had been no valid waiver of uninsured motorist coverage equal to liability coverage. The insured's son was therefore allowed to recover up to $300,000 from the uninsured motorist insurer.

The uninsured motorist insurer filed a third-party claim against the agent, alleging that the action of the agent in forging the insured's signature caused the insurer to incur the additional $295,000 in liability. The district court granted summary judgment for the agent, asserting that the liability of the agent was limited to the recovery of premiums lost by the insurer.

---

[4]427 So.2d 470 (La.App. 5th Cir.), *writs denied,* 433 So.2d 179, 180, and 183 (La.1983).

On appeal, the agent argued that it had not caused the insurer's loss: as agent it had the authority to bind full uninsured motorist coverage. The *Chiasson* court disagreed. The agent's argument assumed that had the insured been asked to sign the waiver form, she would have opted for the full $300,000 coverage. The evidence contradicted this assumption, as it was not disputed that the insured had originally requested only $5000 of uninsured motorist coverage. Therefore, had the agent not breached his duty by failing to obtain the signature of the insured and by forging the signature, the insurer would have been liable for $5000. The court therefore found that the agent was responsible for this loss.

In making this finding, the court at no point stated that the burden of proving proximate cause was not on the plaintiff. On the contrary, the court concluded that the evidence had shown that agent's forgery was the proximate cause of the insurer's loss. The court stated: "Smith's signing Chiasson's name was an intentional and a serious infraction *causing* his principal to be liable in judgment for an extra $295,000."[5] Although the *Chiasson* court reached a result different from the *Mathews* court or the district court in the case at hand, this result was not based on the application of a different legal standard, but rather on an evidentiary showing of proximate cause.

Though there are no Louisiana Supreme Court cases precisely addressing the issue before this court, every reported case on point contains language to the effect that an agent is liable to an insurer only if the agent's breach *causes* the loss. In the typical negligence case the burden of proving proximate cause is on the plaintiff, and there appears to be no compelling reason why the burden should be shifted in this setting. We conclude therefore that the district court applied the correct legal standard in requiring CNA to prove that the breach of River Ridge was the proximate cause of its loss.

B. The factual finding.

---

[5]*Chiasson,* 427 So.2d at 478 (emphasis added).

CNA also argues that the conclusions of fact by the district court are clearly erroneous. The district court found that CNA would have insured the St. Claude Super Market under some form of policy, although it may not have issued a BAP policy. The court based this determination on evidence of CNA's past underwriting history. River Ridge introduced numerous CNA underwriting files where CNA had determined that a risk submitted by an agent and bound under a BAP application was not qualified for the BAP policy, but CNA did not cancel coverage. CNA continued to insure the risks under the BAP until the policies bound by the agents expired. CNA then offered to write coverage for the risks under other programs. Such examples cited by the district court include "All Natural Foods", "Hometown Supermarket", and "Friendly Grocery". The court concluded that, more probably than not, CNA would have treated the St. Claude Super Market risk in a similar fashion.

CNA argues that this factual finding represents clear error. CNA states that "the evidence was uncontradicted that [CNA] would have never insured the property that burned". This is apparently a reference to the testimony of CNA underwriters Mikey Mauldin and Betsy Sullivan, who stated that absent a loss control investigation (which could not be performed after the building burned down) the building would never have been insured. Because a loss control survey could not be performed, CNA argues, the district court's conclusion that CNA would have insured the risk is speculative.

CNA offered no documentation to support the testimony of its underwriters or its position that the building would not have been insured absent a loss control survey. River Ridge, on the other hand, introduced numerous examples of underwriting files where CNA wrote policies before obtaining a loss control survey.[6] River Ridge also introduced CNA underwriting files in which CNA continued to insure a risk after a loss control investigation was performed and the risk was

---

[6]Examples include "Ferrara's Supermarket", Def. Exh. P–116, at 176; and "Gulf Marine and Industrial Supplies", Def. Exh. P–119–5, at 324.

determined unsatisfactory.[7]  This evidence supports the district court's conclusion;  it was not speculative, and certainly was not clearly erroneous.

CNA also argues that the district court misinterpreted some of the underwriting files on previous risks that CNA had insured.  With regard to "All Natural Foods", for example, CNA asserts that the district court incorrectly determined that the application on its face revealed that the BAP requirements were not met.  CNA argues that although the building was more than twenty years old, it had been renovated in 1981.  This does not meet the BAP requirements, however, because the application was in 1987, and renovations must have been no more than five years prior.  CNA's other arguments in this regard are similarly weak.

In sum, CNA has pointed to no evidence supporting their view that the factual determinations of the district court were clearly erroneous.

### III. MONETARY LIMITS ON BINDING AUTHORITY.

CNA argues that River Ridge is liable for all sums paid in excess of $250,000 regardless of the outcome on the first issue.  CNA bases this argument on the fact that River Ridge was authorized to bind property coverage up to a $250,000 maximum, and exceeded its authority when it bound the St. Claude property for $550,000.  Based on the wording of the agency agreement and the evidence presented at trial, River Ridge was authorized to bind up to $250,000 per property *coverage,* and was authorized to issue more than one type of coverage per property.  This would mean that River Ridge exceeded it authority by only $50,000 because it bound two types of coverage, one of which did exceed the $250,000 limit.  Final resolution of this issue is, however, irrelevant.

In order for CNA to recover from River Ridge, CNA must prove that the breach of River Ridge caused CNA's loss.  CNA presented no evidence that River Ridge, by exceeding its binding

---

[7]An example is "Mattress Makers", Def. Exh. P–131–3B, at 86.

authority, was the proximate cause of any loss of CNA. CNA presented no evidence that it was not common practice for agents to exceed the monetary limits of their binding authority, or that CNA would not have continued to cover the building for $300,000. Because CNA has not met its burden of proof of proximate cause, there can be no recovery from River Ridge.

## IV. CONCLUSION.

We affirm the judgment of the district court.