| ]GRISBAUM, Judge,
dissenting.
I respectfully dissent from the majority’s opinion based on the following reasons. It is well-settled that where an insurer is exposed to liability for policy claims because of action by its agent beyond the agent’s authority or contrary to instructions, the agent is accountable to the insurer for the latter’s loss. Chiasson v. Whitney, 427 So.2d 470 (La.App. 5th Cir.1983); Richard v. Am. Fed’n of Unions, Etc., 378 So.2d 564 (La.App. 3d Cir.1979).
We are called upon to decide if there are any issues of material fact concerning LGS’ allegations that Graham did not comply with LGS requests to obtain information necessary to process applications of C & W employees for coverage under the policy, and that Graham failed to provide full and complete information to LGS about the health of the Wassermans in order for LGS to determine whether they were eligible for coverage under the policy.
The basic contention by LGS is that the following questions were answered in the negative on Diana Wasserman’s Evidence of Insurability form.[1] Pertinent parts of the Evidence of Insurability read as follows:
1. Are you or any of your dependents presently ill, taking medication or receiving treatment, or do any of you have any physical or mental impairment, congenital or otherwise?
*767 2. Have you or any of your dependents consulted a physician, been hospital confined, had surgery, or had surgery or treatment recommended -within the last 5 years? If yes, explain.
3. Have you or any of your dependents, within the last 5 years, had any indication, diagnosis, cure, advice, consultation, treatment or taken any medication for: ...
a. Heart, stroke, cardiovascular disorder or cancer or have you or any of your dependents incurred medical expenses in excess of $5000 during the previous 24 months or been disabled in any manner?
b. High blood pressure, respiratory disorder, back pain or disorder of the spine or joints?
c. Diabetes, ulcers, colitis or disorder of the gallbladder, kidney, bladder or liver?
According to the affidavit of Nathan Hays, and LGS official, LGS relied on this information to determine whether to approve C & W, and specifically the Wassermans as a group for coverage. Hays stated through his affidavit that had LGS underwriters been aware of the facts concerning Mr. Wasserman’s health history, his application for coverage would have been declined.
The record reflects Martin Wasserman had been diagnosed as having diabetes melli-tus while hospitalized in 1988, that he had been diagnosed in 1988 as having severe hypertension in June, July, and September of 1988 with a blood pressure reading off the underwriting charts of LGS, and that he had an abnormal abdominal echospan and chest x-ray in June of 1988. Martin Wasserman had also incurred medical expenses in excess of $5,000 within 24 months of the ^application date, all contrary to what was reflected on their Evidence of Insurability form.
LGS contends that Graham was aware of Martin Wasserman’s medical conditions through his prior dealings with the Wasser-mans, but failed to divulge that information to LGS.
The record evidence reflects Graham knew about Martin Wasserman’s health condition as seen in the deposition of Martin Wasser-man, who stated he gave Graham some medical papers and letters which reflected his diabetic condition prior to 1990, when Graham was initially searching for a group plan for C & W.
Diana Wasserman’s deposition also reflects Graham was aware of her husband’s condition because their first contact with Graham was during the period her husband was in his serious diabetic condition. She testified that when Graham insured them with Western Pacific he had knowledge of her husband’s health problems. She also testified she specifically spoke with Graham about her husband’s diabetes and hypertension.
What indicates Graham failed to provide LGS with information concerning Martin Wasserman’s health history is the deposition testimony of Diana Wasserman who stated she never filled out the Evidence of Insura-bility form. Mrs. Wasserman testified the only thing she did in connection with this group policy was to sign a blank application card. She definitively state she signed the Evidence of Insurability card, but did not fill it out. She did not recall if Graham asked her about any of the questions on that card, but reiterated that he was aware of her husband’s condition since he had been doing business with them for well over a year before C & W applied for a group policy with LGS.
13Exhibit J, the Evidence of Insurability form for Diana and Martin Wasserman, has the pre-existing conditions (the questions listed earlier in this opinion) all checked “No.”[1]
*768 The law states that an insurer is bound by its agent’s actions in completing policy application. Tiner v. Aetna Life Ins. Co., 291 So.2d 774 (La.1974).
There is ample evidence to indicate LGS requested the Evidence of Insurability cards as a prerequisite to extending coverage. Graham’s argument that he thought since C & W fell within the 6^9 employee group, that they did not have to answer any medical questions is more than rebutted through the evidence in the record. Graham received that information from a cover sheet which provided benefit summaries for several prospective policies, and more importantly carried a disclaimer that the summary did not guarantee underwriting acceptance. Finally, the Benefit Summary did not originate from LGS, but another company called Group Insurance, Inc., which only provided benefit summaries.
Exhibits E and I are letters from LGS to Graham requesting Evidence of Insurability forms be completed and returned to LGS. The record indicates LGS did not extend coverage until it received these forms. Nathan Hays indicated these forms are used in determining whether to accept people as a risk.
In his opposition Graham does not dispute the material fact that LGS represents through Diana Wasserman that she did not fill out the questionnaire, nor did she recall Graham questioning her about the preexisting conditions. However, Graham does raise some factual discrepancies, such as whether C & W |4was an auto repair facility, whether the premiums charged to C & W by Western Pacific Employers Trust were going to increase as a result of Martin Wassermann’s diabetes, whether LGS sent Benefit Services the proper forms concerning evidence of In-surability, and the fact Graham and Benefit Services still had a relationship with LGS.
These are not material facts that would preclude the granting of a summary judgment. The issue is whether Graham did not obey LGS in completing the employer application for group coverage. Whether C & W was an auto repair facility is irrelevant since the record reflects LGS made at least two requests for the C & W employee to complete the Evidence of Insurability forms. The nature of whatever C & Ws business was not relevant. Furthermore, the issue Graham attempt to raise regarding whether Benefit Service ever received the correct forms does not raise a material issue, since all correspondence between he and LGS was also sent to C & W, thus he was aware the forms were not completed. Once LGS did receive the completed forms, they were from Benefit Services.
We find the evidence supports the finding that there is no question that Graham was aware of Martin Wasserman’s health history. Based on the uncontroverted testimony that Diana Wasserman gave regarding the fact she did not fill out the preexisting condition questionnaire on the Evidence of Insurability form, we also find Graham was not truthful in his representations to LGS about Martin Wasserman’s health.
For the reasons assigned, I respectfully dissent from the majority opinion.