488 So.2d 1331 (1986)
Connie Marie GARDINER, Plaintiff-Appellee,
v.
COMMERCIAL UNION INSURANCE COMPANIES, State Farm Mutual Automobile Insurance Company, Earline Roy, St. Paul Fire & Marine Insurance Company, Kurtz/Casanova Agency, Inc. and Bonnie Goudeau, Defendants-Appellants, Defendants-Appellees.
No. 85-540.
Court of Appeal of Louisiana, Third Circuit.
May 14, 1986.
*1332 Terry L. Rowe, Lafayette, for defendant-appellant.
Gachassin & Hunter, Nicholas J. Sigur, William J. Zeiger of Hannah & Kaufman, Lafayette, for defendants-appellees.
A.I. Stacey Williams, Lafayette, for plaintiff-appellee.
Before DOUCET and LABORDE, JJ., and BOND[*], J. Pro Tem.
LABORDE, Judge.
Defendants, Earline Roy and Commercial Union Insurance Company (Commercial Union), appeal a judgment holding them liable in solido to plaintiff, Connie Gardiner, for damages resulting from a vehicular collision. Commercial Union also appeals the denial of its third party demand against co-defendant St. Paul Fire & Marine Insurance Company (St. Paul), the errors and omissions insurer of the Kurtz/Casanova Agency and its agents and employees. We affirm.
We begin our review by reproducing in full the district court's excellent reasons for judgment.
"This matter came up for trial on the merits on November 13, 14 and 15, 1985.

*1333 The facts of this case are that on November 15, 1984, the plaintiff, Connie Gardiner, was travelling in her automobile on Maple Street in Lafayette. She was hit from the rear by Earline Roy, one of the defendants. The evidence revealed that the defendant, Earline Roy, had taken her eyes off the road and was inattentive in her driving at the time of the collision. Earline Roy's insurer was State Farm Insurance Company ($25,000 coverage). The plaintiff's insurer was Commercial Union. The evidence indicated that the waiver of uninsured motorist coverage was signed by someone other than the plaintiff. The Court found the testimony by Robert Foley to be conclusive and convincing in this regard. The Court does not feel there was proof enough to establish exactly who signed the waiver, but it was definitely not the plaintiff, therefore, the Court finds the uninsured motorist coverage which the plaintiff had with Commercial Union is $100,000.00.
After the accident, the plaintiff was `draped over the wheel', having been knocked unconscious momentarily. Since the accident, she has suffered headaches, pain in the neck and back, numbness in the hand, hip and leg, depression, and fatigue. The plaintiff alleges that she has been a dancer since she was two years (2) old and has suffered great mental anguish from her inability to perform as a dance instructor, something she has wanted and trained for all of her life. The plaintiff owns her own dance studio. The plaintiff is presently thirty-five (35) years old. The Court found the plaintiff to be very truthful and sincere during her testimony, especially while testifying concerning the loss she feels from not being able to demonstrate and fully teach her dance students. The Court noted several times during questioning concerning this that the plaintiff was visably [sic] shaken and cried.
The doctors' depositions indicated that the plaintiff has a cervical strain and a lumbar disc injury. All of the doctors indicated that the plaintiff is unable to perform her work as a dance instructor.
The first issue for the Court is liability. The Court finds the accident to be caused totally by the negligence of Earline Roy. The Court found the plaintiff to be without negligence.
The second issue for the Court was the validity of the uninsured motorist waiver, which the Court explained above.
The next issue for the Court is the amount of damages the plaintiff has suffered. The Court finds damages in the following amounts:

Past and future medical expenses
 ($7,108.77) less credit for amount
 paid by Commercial Union ........... $ 2,108.77
Past and future pain and suffering
 (physical) .......................... 10,000.00
Past and future mental anguish ....... 20,000.00
Loss of earning capacity ............. 60,000.00
Attorney fees and penalties .......... -0-
 __________
 TOTAL DAMAGES .................. $92,108.77

The next issue is the third party demand filed by Commercial Union against St. Paul Fire & Marine. As previously discussed, the signature on the waiver was not that of Connie Gardiner, the plaintiff. Also the third party defendant, Kurtz/Casanova Agency did not make certain the signature was properly made. However, the Court does not feel that the third party plaintiff, Commercial Union, proved that the third party defendant, Kurtz/Casanova Agency, did actually breach a duty it had to Commercial Union. There was no proof Commercial Union required an agency to properly secure or witness an insured's signature.
The final issue is the fees of the experts. Those fees are as follows:

1) Dr. Bernard Pettingill ....... $300.00
2) Dr. Melville Wolfson ......... 300.00
3) Robert Foley ................. 500.00
4) Dr. Stewart Phillips ......... 250.00
5) Dr. Michel Heard ............. 250.00

Costs of this proceeding are to be paid by the defendants.
THUS DONE AND SIGNED in Chambers, Parish of Lafayette, Louisiana, this 21st day of November, 1984.
 /s/ Ronald D. Cox
 RONALD D. COX"
*1334 We adopt the district court's findings of fact as our own, for they are totally supported by the record. The first issue which we address is whether the court clearly erred in awarding plaintiff $60,000.00 for loss of earning capacity. Commercial Union argues that the evidence on this point is insufficient; Earline Roy contends that it is incompetent.
A considerable portion of plaintiff's evidence of loss of earning capacity took the form of expert testimony. Dr. Bernard F. Pettingill, Jr., who qualified as an expert in economics, examined plaintiff's tax returns for the years 1979 through 1983. He was informed that plaintiff was in an accident, and was given summary statements of physicians who had treated her. He was told that plaintiff had hired additional instructors since the accident. After reviewing this information, Dr. Pettingill testified that he was persuaded that plaintiff was, because of steadily increasing business costs attributable to her injuries, approaching a "negative earning capacity." He then testified as to plaintiff's probable earning capacity under two model scenarios: 1) teaching secondary school in Lafayette; and 2) teaching dance as an employee of another studio. After considering the time value of money, probable wage increases, and plaintiff's work-life expectancy (52.9 years, according to Dr. Pettingill), the witness concluded that the present value of plaintiff's loss was $202,243.78 under the secondary school teacher model, and $233,567.82 under the dance instructor model. Objections to nearly all of this testimony were improperly overruled.
In giving their opinions, experts should state the facts upon which their opinions are based; the value of an opinion of an expert witness is therefore dependent on the existence of facts upon which it is predicated. State Department of Highways v. Beaird-Poulan, Inc., 292 So.2d 842 (La.App. 2nd Cir.), aff'd as amended, 305 So.2d 505 (La.1974). In order for an opinion of an expert to be valid and to merit much weight, the facts upon which that opinion is based must be facts substantiated by the record. Prejean v. Trinity Universal Insurance Company, 210 So.2d 395 (La.App. 3rd Cir.), writ refused, 252 La. 476, 211 So.2d 334 (1968). Experts may give opinions, but they must state the facts on which they are based. Dixie Pipeline Company v. Barry, 227 So.2d 1 (La.App. 3rd Cir.1969), writ refused, 255 La. 145, 229 So.2d 731 (1970).
Dr. Pettingill's estimates of plaintiff's loss of earning capacity were based largely on the results of surveys which he had conducted. For the dance instructor model, he asked unidentified directors or owners of area dance studios: 1) how the student teachers in their studios were recruited and paid; 2) what was the average wage paid to qualified teachers (more than five years experience); 3) how important the school name (reputation) was in attracting and retaining students; 4) what were the average enrollments and what would happen to the enrollments if the owner were not able to instruct? Defendants' objections to the hearsay nature of Dr. Pettingill's testimony were improperly overruled.
We do not hold that all survey results are inadmissible as evidence. But where an expert gives opinion testimony based on answers to survey questions which are offered, as here, to prove the truth of those answers, that opinion is not based upon fact, as the decisional law requires, but upon inadmissible hearsay. The loss of plaintiff's earning capacity is a central issue in the case, which cannot be resolved with inadmissible evidence. We must, therefore, ignore Dr. Pettingill's testimony to the extent that it is based upon his studio survey results.
Defendants also insist that Dr. Pettingill's testimony as to plaintiff's potential earnings as a secondary school teacher should have been excluded. We agree. There is no fact evidence in the record establishing that plaintiff has pedagogical qualifications, experience, or even inclinations. Dr. Pettingill's opinions in this regard were as irrelevant as they were lacking in foundation.
*1335 Excising Dr. Pettingill's testimony and viewing the remainder of the record, we are still persuaded that the district court committed no manifest error in its $60,000.00 award for loss of earning capacity.
Our review of damage awards granted by the trial court is narrow. Louisiana Civil Code article 2324.1 dictates that in the assessment of damages resulting from offenses and quasi-offenses, "much discretion must be left to the judge or jury." See Wolfshohl v. Boudreaux, 482 So.2d 954 (La.App. 3rd Cir.1985). Unless the record demonstrates that the trial court abused this "much discretion," the appellate court should not disturb the award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). Reviews of lost earning capacity awards should be all the more deferential where, as here, the damages are especially uncertain. Plaintiff was not a wage earner entitled to a certain amount of hourly pay. Nor did she draw an unvarying salary. Much of her earnings was reinvested into the business which she owned and managed. Any conclusion as to the adequacy or excessiveness of her award must be based upon a review of all relevant circumstances.
Medical testimony, as the district court noted, establishes that plaintiff suffered a cervical strain and a lumbar disc injury. Earline Roy complains that plaintiff's physical limitations are "slight." We recognize that the treating physicians found no sign of injury which would hamper normal daily activities. But plaintiff is a dancer and a dance instructor. Exercise of her profession requires stressful movements akin to those required of professional athletes. It is not enough to answer, as does Earline Roy, that plaintiff can still do ballroom dancing. The physicians agreed that plaintiff's dance activities which cause her pain, such as turning, bending, and twisting, should be curtailed.
The plaintiff and her mother both testified that plaintiff (now in her thirties) has been preparing for a dancing career since the age of two and that she has no other skills. Plaintiff also testified that her inability to demonstrate dance steps has necessitated the hiring of additional instructors.
Joanna Sonnier, one of plaintiff's assistants, testified that plaintiff, has, since the accident, lost her ability to demonstrate dance techniques, and that her leadership ability has suffered as a result.
The full indemnification to which an injured party is entitled under La.Civ. Code art. 2315 includes damages for decreased earning capacity, which is determined by deducting plaintiff's earning ability after the injury from her earning ability immediately prior to the injury rather than by deducting her income after the injury from her income prior to the injury. Coco v. Winston Industries, Inc., supra. We are satisfied that the trial court's award for loss of earning capacity is supported by the record. For that reason, we reject plaintiff's demand for additional damages as well as appellants' demand for reduction of the award.
We now address Commercial Union's third party demand against Bonnie Goudeau, the Kurtz/Casanova Agency (Goudeau's employer), and the agency's errors and omissions insurer, St. Paul. The claim alleges that Goudeau's failure to procure from plaintiff a valid election of lower UM limits constitutes a breach of the duty imposed by La.Civ.Code articles 3002 and 3003. These articles impose liability upon mandataries to their principals for damages resulting from non-performance of duty, unfaithfulness, fault, or neglect. The third party defendants do not contest the lower court's factual finding that a signature in plaintiff's name, which purported to signal plaintiff's election of lower UM limits under the Commercial Union policy, was not executed by plaintiff, but was rather a forgery. We are of course satisfied that, had Kurtz/Casanova procured from plaintiff a valid, binding waiver of uninsured motorist coverage equal to the limits of bodily injury liability provided by the policy, Commercial Union's exposure would have been only $5,000.00. However, absent *1336 a duty, there can be no breach. It has not been established that Commercial Union ever required that its agents verify signatures of policyholders electing lower limits of UM coverage than those provided by the policy. The district judge drew no conclusions as to who had forged plaintiff's signature on the waiver form. We are thus constrained to reject Commercial Union's claim for indemnification against St. Paul.
For the above and foregoing reasons, the judgment of the district court is affirmed. Costs of this appeal are taxed equally between appellants Earline Roy and Commercial Union.
AFFIRMED.
NOTES
[*] Judge W. Ellis Bond of the Fourteenth Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.