FORET, Judge.
This is a personal injury action arising out of a plane crash. On June 7, 1981, John Arceneaux, Francis Arceneaux, and Adrian Arceneaux were injured when the Grumman American AA-5A Cheetah aircraft in which they were passengers, crashed upon takeoff. Three separate lawsuits were filed: Francis Arceneaux and Adrian Arceneaux brought suit against Charles Daggett, Jr., Lyon Flying Service, and their insurers; Francis Arceneaux, Adrian Arceneaux, and Charles Daggett, Jr. brought suit against Gulfstream American Corporation, Grumman American Aviation Corporation, and Lyon Flying Service; John Arceneaux brought suit against Charles Daggett, Jr., Lyon Flying Service, Gulfstream American Corporation, and Grumman American Aviation Corporation. The lawsuits were consolidated.[1]
Prior to trial, the trial court determined that there was no coverage for renter pilots under the policy of insurance issued to Lyon Flying Service by United States Aviation Underwriters, Inc. Also prior to trial, Gulfstream American Corporation, Grumman American Corporation, and its subsidiary, Grumman American Aviation Corporation, and its liability insurance company were dismissed from the lawsuits.
The remaining defendants in this case are Charles 0. Daggett, Jr., the pilot, and Lyon Flying Service, Inc., the lessor of the plane.
Charles O. Daggett, Jr. leased the airplane on June 6, 1981 from Lyon Flying Service, Inc., a fixed base operator in Welsh, Louisiana. Daggett, an FAA licensed and fully legal pilot, had been thoroughly checked out personally and cleared in this airplane by Emery Lyon, owner and manager of Lyon Flying Service. The airplane was purchased new in 1976 by Lyon Flying Service. It gave trouble free service with routine maintenance from the date of purchase to the date Daggett crashed it.
Daggett was to transport the Arceneaux brothers, Francis and Adrian, and their nephew John, to a public mapped airfield at Clinton, Louisiana. This landing strip was determined by Lyon to be an appropriate runway, and Daggett was authorized to fly the aircraft to the Clinton airfield, which was the destination recorded by Daggett in the pilot’s log. No permission was given for Daggett to go to any other location.
Daggett left Welsh in the fully loaded plane. Unbeknownst to Lyon Flying Service, pilot Daggett deviated from his announced flight plan. Instead of going to the Clinton airstrip, Daggett ferried the Arceneauxs to a private, non-mapped airstrip at Honeysuckle Farm, a small grassy hillock near Liberty, Mississippi, completely surrounded by tall pine trees. Daggett had not cleared this detour either with Lyon Flying Service or the owners of Honeysuckle Farm.
The runway was approximately 2,250 feet. It had not been used by an aircraft since 1975, but was mowed periodically by a caretaker. The airstrip ran generally in a northwesterly-southeasterly direction and was completely surrounded by pine trees. The height of the trees above the runway was approximately 34 feet.
*1003 The aircraft performed in a normal acceptable manner during the trip to Honeysuckle Farm and upon landing there. Shortly after arrival, Daggett and A1 Ar-ceneaux (a relative of the Arceneauxs) took a short trial run to the northwest to determine the plane’s capacity at taking off from the farm. On this test flight/takeoff, with two persons seated in the plane, and no luggage, there was no discernible problem getting over the tall pine trees. The contemplated takeoff conditions, however, were not simulated before the crash flight.
The crash occurred on June 7 during takeoff. Daggett began his takeoff and, after being airborne some twenty to thirty feet, determined that he could not clear the trees at the end of the runway and cut the power, thereby aborting the takeoff, forcing the plane back to the ground and then striking the trees.
Prior to the arrival at Honeysuckle Farm, Daggett was unfamiliar with the airstrip. He had never flown to the location before. There was concern among those present about the ability of Daggett to safely maneuver the plane, fully loaded, out of that airstrip. Several factors played a part in that concern: the size of the aircraft, the size of its engine, the incline, the grassy runway, the lack of wind, the high temperature, the humidity, and the air density.
Plaintiffs’ petition alleged several acts of negligence on the part of Lyon Flying Service: failure to adequately warn Daggett of the special dangers and hazards present in the aircraft at the time of renting it; failure to adequately qualify Daggett for his private pilot’s license, and failure to provide adequate flight instructions to him regarding the aircraft; improperly maintaining and servicing the aircraft prior to the accident, causing the aircraft to contain hidden defects and dangers unknown to Daggett; failing to adequately check out the aircraft on the day it was leased to Daggett to ensure that the plane was in good running condition and that all of its instruments and working parts were functioning correctly; failing to warn Daggett of the dangers and hazards of taking off from unpaved airstrips; and failing to warn Daggett of the incorrect operating characteristics depicted in the pilot’s operating handbook. Plaintiffs also advanced that there is strict liability against Lyon Flying Service.
The matter was bifurcated and the trial on the issue of liability was held on October 5 and 6, 1988, and March 2, 1989. On the negligence issue, the trial court found that the defendant, Lyon Flying Service, had not breached any duty of reasonable care owed to either the pilot or his passengers and, concerning the strict liability of the defendant, found that the plaintiffs failed to carry their burden of proof in ruling out pilot error as the cause of the accident. The judge, accordingly, ruled in favor of the defendant and against the plaintiffs, John Arceneaux, Adrian Arceneaux, Francis Arceneaux, and Charles Daggett, Jr.; and in favor of plaintiffs, John Arceneaux, Adrian Arceneaux, and against Charles Daggett, Jr., individually. Plaintiffs, John Arceneaux, Adrian Arceneaux, and Francis Arceneaux, appealed from this judgment.
ASSIGNMENTS OF ERROR
Plaintiffs raise four issues on appeal. First, plaintiffs contend the trial judge abused his much discretion in assigning more weight to the testimony of the defense’s expert witnesses, whose opinion was based on inadmissible evidence. Plaintiffs next contend that the trial judge incorrectly placed the burden of proof on the plaintiffs to prove that the pilot, as a third person, was not at fault. Plaintiffs also contend that the trial judge erred in failing to find the defendant strictly liable for an airplane which was defective due to the inadequate and inaccurate instructions concerning its use. Finally, plaintiffs contend that the trial judge erred in failing to find the defendant negligent for entrusting an aircraft to an inexperienced pilot who lacked proficiency not only in flying passengers but also in flying this particular aircraft and in making short field takeoffs.
DISCUSSION
It is well settled that a court of appeal may not set aside a trial court’s or a jury’s *1004 finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluation and inferences are as reasonable.
ASSIGNMENT OP ERROR NO. 1
The court below heard the testimony of two expert witnesses: Norman L. Horton, the plaintiffs’ expert witness, and Jack J. Eggspuehler, the defendant’s expert witness. After reviewing the record, we accept and adopt the judge’s conclusions with regard to the experts’ testimony, as set forth in his reasons for judgment:
“Mr. Horton testified that he was asked to determine if the aircraft could have taken off safely under the conditions existing, using the information contained in the POH. It was his opinion that the aircraft should have taken off and cleared the trees located 282 feet beyond the end of the runway by 43.05 feet. He opined that it did not because the aircraft lacked sufficient horsepower to climb sufficiently on that particular day. The thrust was simply insufficient to keep it in the air. From his examination of all of the facts and information he concluded that DAGGETT did not do anything improper.
“On the other hand, Mr. Eggspuehler testified that the aircraft was not underpowered and in his opinion the cause of the crash was pilot error on the part of DAGGETT who was operating the aircraft outside of its operating limitations in a very dangerous manner. He testified that this pilot error consisted of several factors of a cumulative nature, including: (1) the decision to land at an unapproved strip without knowing the details of that strip; (2) ignoring the rolling, uneven surface of the strip which required the aircraft to travel up and down hill; (3) the high temperature and density which would diminish the capability of the aircraft; (4) the confined area of the strip with trees on both sides and at each end which represented obstacles to the take-off. The trees on both sides eliminated options for the pilot; (5) the decision to take off close or slightly over gross take-off weight. This factor played heavily in the accident; (6) failure to define a definite go-no-go-point. DAG-GETT used one-half to two-thirds of the runway rather than a definite point; (7) the tall grass which would create friction and drag and would have a profound deteriorating effect on the performance of the aircraft. This factor also played heavily in the accident; (8) going beyond his go-no-go-point before aborting the take-off; (9) the use of flaps which was a violation of the POH; (10) over-rotation of the aircraft which caused it to mush or stall to the surface; and (11) taking off in the more dangerous direction, that is, to the southeast, where the taller obstacles were present instead of to the northwest which would have clearly presented less risk.
“With regard to expert testimony, the court is not bound by such testimony. Rather, expert testimony is to be weighed by the court the same as any other evidence. The weight which is to be given to the testimony of an expert is to be determined by his qualifications, experience in the field and the facts upon which his opinion is based. The court is accorded considerable discretion in the acceptance or rejection of expert testimony. Taylor v. Dixie Dandy, 493 So.2d 654 (La.App. 2 Cir.1986). In weighing opposing expert opinions, the trier of fact should consider their professional qualifications, experience in their particular science or field, reasons given in support of their opinions, and other evidence which supports or detracts from their credibility. Whittle v. Miller Elec. Mfg. Co., 507 So.2d 266 (La.App. 3 Cir.1987).
“After carefully considering the qualifications, experience and testimony of the experts, the court concludes that the testimony of Mr. Eggspuehler should be given more weight than the testimony of Mr. Horton. Among other considerations, Mr. Eggspuehler, as a pilot, has *1005 flown a Cheetah and actually inspected the scene of the crash.”
Plaintiffs argue that the trial judge should not have accorded greater weight to the testimony of Mr. Eggspuehler because Mr. Eggspuehler relied on inadmissible hearsay in the formation of his opinion and therefore his opinion is partially invalid. Plaintiffs contend that Mr. Eggspuehler formed his opinion based partly on the pilot’s statement and depositions of the parties which contained hearsay statements. Plaintiffs rely on Gardiner v. Commercial Union Insurance, 488 So.2d 1331 (La.App. 3 Cir.1986). In Gardiner, this Court ignored the plaintiffs expert opinion testimony which the expert based on answers to survey questions because it was not based on facts as the law requires but instead was based on inadmissible hearsay. The expert in Gardiner formed his opinion based largely on the results of the survey.
The expert in this case, Mr. Eggspuehler, did not base his opinion “largely” on the statement of the pilot or the depositions. He reviewed information relative to weather observations, information contained in the aircraft file, airman’s file, excerpts from advisory circulars such as flight training handbooks, the Airman’s Information Manual, the Pilots Handbook of Aeronautical Knowledge, the Advanced Pilot Manual and other FAA publications, such as Planning Your Take-Off. Mr. Eggspuehler visited the Honeysuckle strip, looked at maps, reviewed the Pilot Operating Handbook for the Grumman American Cheetah, looked at photocopied pictures of the aircraft and accident site in addition to the visit, reviewed the logbook for the aircraft, Mr. Daggett’s logbook, the survey of the Honeysuckle Farm, the various exam-o-grams published by the FAA, and reviewed trial transcripts.
Additionally, La.Code of Evidence Art. 703 provides that an expert may base his opinion upon facts or data not admissible in evidence if of a type reasonably relied upon by experts in the particular field. See Willie v. American Casualty Co., 547 So.2d 1075 (La.App. 1 Cir.1989), writ granted, 553 So.2d 467 (La.1989), remand on other grounds. Mr. Eggspuehler testified that it was his custom to consider pilot statements in garnering facts and forming opinions. As to the use of depositions, we note that plaintiffs’ expert also relied on the depositions of the parties in forming his opinion.
The importance placed upon expert testimony is largely dependent on the expert’s qualifications and facts that form the basis of his or her opinion. And where two expert opinions differ factually, the leeway accorded the trial court allows it to favor one over the other. Winford Co., Inc. v. Webster Gravel and Asphalt, Inc., 571 So.2d 802 (La.App. 2 Cir.1990). The effect and weight to be given expert testimony is within the broad discretion of the trial judge. Sawyer v. Niagara Machine and Tool Works, Inc., 535 So.2d 1057 (La. App. 2 Cir.1988), writ denied, 536 So.2d 1222 (La.1989). In weighing opposing expert opinions, the trier of fact should consider education and experience of the expert in a particular science or field, reasons given in support of opinion and other evidence which supports or detracts therefrom. Whittle v. Miller Electric Mfg. Co., 507 So.2d 266 (La.App. 3 Cir.1987). Considering Mr. Eggspuehler’s vast experience in the field of pilot operations, accident investigation, and air safety, combined with his consideration and evaluation of the technical data available, we find the decision to accept his opinion in preference to that of plaintiffs’ expert rested well within the prerogative of the trial court.
ASSIGNMENT OF ERROR NO. 2
Plaintiffs next complain that the trial court erred in assigning as an element of plaintiffs’ proof in strict liability that the harm was not caused by the fault of the victim or a third person. We agree. Nevertheless, we find the error harmless.
Under La.C.C. art. 2317, plaintiffs must prove: (1) a defect in the thing; (2) that the defect was a substantial cause of the harm; and (3) that the defective thing was in the defendant’s custody. The burden is on the owner/guardian of the defective thing to prove that the damage was caused by the fault of the victim, by the *1006 fault of a third person, or by an irresistible force. See Loescher v. Parr, 324 So.2d 441 (La.1975), and its progeny.
In its reasons for judgment, the court recognizes that it was Lyon Flying Service asserting that the sole cause of the crash was pilot error (third party fault) and concluded, based on the evidence, that it was pilot error and not a defect in the aircraft or Pilot’s Operating Handbook. Additionally, the plaintiffs, who bear the burden of proving each of the elements of the claim by a preponderance of the evidence, did not meet that burden. None of the elements of strict liability were proven to the trial court. Not only did plaintiffs fail to establish the existence of a defect, the evidence shows the accident was the result of third party fault, i.e., Charles Daggett.
ASSIGNMENT OF ERROR NO. 3
Next, plaintiffs contend that the trial judge erred in failing to find the defendant strictly liable for an airplane which was defective due to the inadequate and inaccurate instructions concerning its use. Plaintiffs urge that since the pilot followed the takeoff instructions contained in the Pilot’s Operating Handbook (POH) to the letter and was unable to successfully complete the takeoff maneuver, then the POH was obviously defective. Plaintiffs concede in their brief that there is no defect in the mechanics of the aircraft, only that the aircraft was defective in that it failed to respond and perform in the manner set forth in the POH. The POH tells the pilot, under various conditions, how many feet it will take to get him airborne and how many feet it will take him to land. It also instructs the pilot that more runway is needed for a heavier load. The pilot must factor in certain characteristics, i.e., slope or incline of the runway, weight of the load, etc. and determine how much landing strip is needed to successfully take off. The trial court was correct in finding that the POH was merely a guide; that it is the responsibility of the pilot in command to take the information contained in the POH and make sound judgments based on any particular situation he encounters. We fail to see how plaintiffs can argue, either under strict liability or products liability principles, that the POH was in any way defective. We agree with the trial judge in concluding that the pilot chose not to take a conservative posture in such a questionable takeoff. When we consider the circumstances in this case and the evidence presented, we find no error in the trial judge’s ruling.
■ ASSIGNMENT OF ERROR NO. 4
Plaintiffs finally contend that the trial judge committed manifest error in determining Lyon Flying Service, as a fixed base operator, did not breach any duty owed to the pilot or his passengers when it leased Daggett an aircraft he was not qualified to fly for a flight which he had relatively no experience in making. We find this argument without merit. Daggett was an FAA certified pilot at the time he leased the plane from the defendant. He was permitted under law to fly such an airplane as pilot in command. Furthermore, there is no FAA requirement that airplane lessors give instructions to licensed pilots before leasing airplanes. In fact, defendant went beyond the call of duty in insisting that Daggett gain experience in flying a Gulfstream AA-5A Cheetah. Before the fateful flight, Daggett returned to defendant and made several basic maneuver flights. Defendant went even further and investigated the type of landing field at Clinton, the original destination, to be sure it matched the abilities of Daggett. Based on Daggett’s pledge that he was to fly the plane to Clinton, defendant agreed to lease the airplane to Daggett.
Accordingly, we affirm the judgment of the trial court. Costs of this appeal are assessed to plaintiffs in equal proportions.
AFFIRMED.

. Separate opinions are being rendered this date in the consolidated case of Arceneaux v. Daggett, 594 So.2d 1007 our docket number 90-768, and in the case of Arceneaux v. Lyon Flying Service, Inc., 594 So.2d 1007 our docket number 90-769.