628 So.2d 1327 (1993)
Deborah V. BABINEAUX, Plaintiff-Appellant,
v.
TOLLIE FREIGHTWAYS, INC., et al., Defendants-Appellees.
No. 93-492.
Court of Appeal of Louisiana, Third Circuit.
December 8, 1993.
*1328 Gerald Charles de Launay, Warren A. Perrin, John V. Ghio, Lafayette, for Deborah V. Babineaux.
Raymond C. Jackson III, Lafayette, for Tollie Freightways, Inc., et al.
Before DOMENGEAUX, C.J., and STOKER and THIBODEAUX, JJ.
THIBODEAUX, Judge.
Plaintiff, Deborah V. Babineaux, was injured when, while traveling in a southerly direction on University Avenue in Lafayette, Louisiana during the morning of November 8, 1989, she drove her pickup truck into the rear wheels of the trailer portion of an 18-wheel truck driven by Eddie Arthur Johnson. Ms. Babineaux filed suit against Tollie Freightways, Inc., the owner of the 18-wheeler and Mr. Johnson's employer; Edison Insurance Company, Tollie's insurer; and, Mr. Johnson, the driver of the 18-wheeler. The trial judge awarded total damages of $100,000.00 to Ms. Babineaux and reduced it by 25% for her comparative negligence.
Ms. Babineaux appeals, claiming that the trial judge was clearly and manifestly erroneous in finding her 25% at fault in connection with the accident and clearly and manifestly erroneous in failing to allow her economic expert, Dr. Bruce C. Payne, to testify on her behalf on the issue of lost earning capacity. For the following reasons, we affirm.

FACTS
On the morning of November 8, 1989, Ms. Babineaux was heading south on University *1329 Avenue. As she approached the area of a truckstop, an 18-wheel truck driven by Mr. Johnson, heading north, began making a left-hand turn from the northbound lane of University Avenue proceeding into the truckstop. When the truck turned into Ms. Babineaux's path, she attempted to slow down and veered into the left lane. Despite Ms. Babineaux's efforts, she was unable to avoid colliding with the rear wheel trailer portion of the truck driven by Mr. Johnson.
Ms. Babineaux was the only trial witness who testified regarding the cause of the accident. On direct examination, Ms. Babineaux testified that she saw the truck begin to turn left into the truck stop while crossing the inside and outside north lanes of traffic. The 18-wheeler appeared to be traveling slowly, so she started to slow down thinking that the truck driver would have enough time to make it across the street. When she first saw the truck attempting to turn left, she started to slowly apply her brakes and that she never took her eyes off of the truck. Since Ms. Babineaux was on the outside lane, she swerved to the inside lane so that if the 18-wheeler did not make it completely across both lanes, she would still avoid contact with it. Ms. Babineaux further testified that as she got closer to the 18-wheeler and noticed that it was not out of her lane of travel, she slammed on her brakes to avoid hitting the truck. She claimed that at no time before she hit the truck did she stop pressing on her brakes which, from start to impact, she pressed with steadily increasing pressure.
On cross-examination, Ms. Babineaux stated that she did know how far away she was from the 18-wheeler when she first saw Mr. Johnson attempt to make a left turn into the truck stop. She admitted that on the morning of November 8, 1989, the weather was misty and that she did not immediately apply her brakes upon seeing the 18-wheeler attempt the left turn because she assumed the truck would have enough time to get across the highway and into the truck stop. Her cross-examination further revealed that because the 18-wheeler was "way down the road," had she slammed on her brakes when she initially saw the truck turning left and entering the northbound inside left lane while she was traveling in the outside lane, the accident would not have happened. Her rationale for failing to slam on her brakes at that point was that it did not make sense to do so when she was "that far away" because she would have stopped in the middle of the road. She further explained that he was "far enough away" at that time so she did not feel that she needed to slam on her brakes.
The trial judge assessed Ms. Babineaux with 25% of the fault. In doing so, he stated:
"At trial, plaintiff could not pinpoint how far away defendant's truck was when she first saw it enter into her lane to make the left turn. Plaintiff testified that she lightly applied her brakes as soon as she saw the truck begin to make its turn. She kept her eyesight on the truck, and as she got closer to the truck, she swerved to the left and slammed on her brakes ... Under cross examination, plaintiff admitted that if she had slammed on her brakes when she first saw the truck begin its turn, the accident would never have happened. Plaintiff claims that to immediately slam her brakes after the truck began its turn did not make sense because she would have stopped far from the point of impact. However, she also admitted that she was far enough away from the truck that she did not need to slam on her brakes to stop in time. Implicit in this admission is that plaintiff had the chance to prevent this accident, and she failed to exercise due care under the circumstances."
Included in the trial judge's award of $100,000.00 in damages was an amount for Ms. Babineaux's loss of earning capacity. The witnesses who testified as to that element of damage were Dr. Shepard, the orthopedic surgeon who treated Ms. Babineaux after the accident, and Ms. Karen Keller, an expert in the field of vocational rehabilitation. Dr. Shepard's testimony consisted of discussing her physical limitations by use of specific disability ratings. Ms. Keller assessed Ms. Babineaux's lost wage earning capacity based *1330 upon Dr. Shepard's disability assessments, an achievement test administered to Ms. Babineaux, her interview with Ms. Babineaux, and her knowledge of the labor market. Ms. Keller concluded that Ms. Babineaux's earning capacity had been damaged and that due to her injuries, she suffered a significant decrease in her access to the labor market. The trial judge accepted the testimony of Ms. Keller that Ms. Babineaux suffered a decrease in earning capacity. The trial judge did not allow Dr. Bruce C. Payne, an economist and head of the Department of Economics and Finance at the University of Southwestern Louisiana, to testify. The trial judge sustained the objection to his testimony by defense counsel, stating that he did not know how an economist could aid the court and that the testimony of Ms. Keller was sufficient.

APPORTIONMENT OF FAULT
Ms. Babineaux contends that the doctrine of sudden emergency is applicable to this case. The trial judge, she argues, did not make a finding that her actions were unreasonable, but simply found that she could have acted differently under the circumstances. Therefore, the trial judge erred in failing to apply the sudden emergency doctrine.
Tollie, on the other hand, asserts that there was no sudden emergency because, from Ms. Babineaux's own testimony, when she initially saw the 18-wheeler making its left turn, she was so far away from the truck that it would not have made any sense for her to slam on her brakes. In short, Tollie contends that the trial judge was correct in concluding that if Ms. Babineaux was sufficiently far away from the 18-wheeler that she did not feel the need to slam on her brakes, then she had plenty of time to slow her vehicle down to avoid the accident.
The sudden emergency doctrine is available to a person who finds himself or herself in a position of imminent peril and does not have sufficient time to consider and weigh all of the best means available to avoid that impending danger. Such a person is not guilty of negligence if he or she fails to adopt what subsequently and upon reflection may have been a better means to avoid the peril. Pourteau v. State Farm Mutual Automobile Insur. Co., 572 So.2d 328 (La.App. 3d Cir. 1990); Coleman v. State, Through DOTD, 524 So.2d 1281 (La.App. 3d Cir.1988). In finding Ms. Babineaux to be 25% at fault for causing the accident, the trial judge reasoned that because Ms. Babineaux admitted that she was far enough away from the 18-wheeler that she did not need to slam on her brakes to stop in time, she had the chance to prevent the accident and she failed to exercise due care under the circumstances. Under Louisiana's comparative fault principles as set forth in LSA-C.C. art. 2323, a plaintiff's recovery is reduced by the degree of percentage of fault attributed to him or her by the trier of fact.
LSA-C.C. art. 2323 provides:
"When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss."
At the outset, we note that the trial judge's finding as to degree of fault under LSA-C.C. art. 2323 and whether Ms. Babineaux was faced with a sudden emergency is a factual matter and should not be disturbed on appeal unless the record establishes that the finding was clearly wrong or manifestly erroneous. Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989); Jaffarzad v. Jones Truck Lines, Inc., 561 So.2d 144 (La. App. 3d Cir.), writ denied, 565 So.2d 450 (La.1990).
As noted above, the sudden emergency doctrine is applicable when: 1) the *1331 person finds himself or herself in imminent peril; and, 2) does not have sufficient time to consider and weigh the best means available to avoid the impending danger. In this case, Ms. Babineaux may have found herself in imminent peril when she first saw the 18-wheeler begin to turn left into the truck stop but, by her own testimony, she had sufficient time to consider available means to avoid the accident since she was so far away from the 18-wheeler and thought that it would safely make it across the southbound lanes of travel on University Avenue. After a thorough review of the testimony in this case, we cannot say that the trial judge was clearly wrong in finding that Ms. Babineaux did not meet the requirements for the applicability of the sudden emergency doctrine and in assessing her with 25% of the fault for causing her own injuries.

ADMISSIBILITY OF EXPERT TESTIMONY
Ms. Babineaux contends that the trial judge was clearly and manifestly erroneous in failing to allow her economic expert, Dr. Payne, to testify as to the extent of her loss of employability. Ms. Babineaux's argument, in a nutshell, is that since the trial judge found that she suffered a loss of earning capacity, Dr. Payne should have been allowed to testify to establish the economic value of her lost earning capacity. On the other hand, Tollie asserts that the trial judge has broad discretion in determining who should or should not be permitted to testify as an expert and whether expert testimony is admissible in a particular case.
The trial judge refused to admit Dr. Payne's testimony stating: "I don't know what the economist is going to aid the Court in, ..." In reply, counsel for Ms. Babineaux argued that Dr. Payne would give a value to Ms. Babineaux's earning capacity based on $6.00 per hour and $4.25 per hour and compare the two amounts. The trial judge, in rejecting that argument, stated that it was too speculative to come up with an exact figure where the vocational rehabilitation expert, Ms. Keller, testified that the range of Ms. Babineaux's salary was between $4.25 and $5.50 per hour and because Ms. Babineaux's past work history was so sporadic. The judge felt that Dr. Payne's testimony would not aid the court in the valuation of Ms. Babineaux's loss of earning capacity since it would be based on the $6.00 figure.
In his reasons for ruling, the trial judge stated:
"Plaintiff has also sued to recover her loss of earning capacity as a result of this accident. Her past work history is not very helpful in making a determination of this lost earning capacity. Plaintiff worked part-time for SKC Municipal as a bookkeeper approximately five years ago at SIX DOLLARS AND NO CENTS ($6.00) per hour. She worked approximately ten hours a month and primarily paid bills and wrote checks. Plaintiff held this job for less than a year from November of 1988 to June of 1989, she worked part-time as a barmaid at Thilben's Lounge. After the accident, from March of 1990 to March of 1991, plaintiff worked at Weiner's as a sales clerk. At trial, plaintiff attempted to introduce the testimony of Dr. Bruce Payne, an economist, regarding the amount of earning capacity plaintiff has lost as a result of this accident. Dr. Payne must base his results on plaintiff's past earnings in order to project a future loss. Defendant objected to the introduction of this testimony, arguing that it was speculative because of plaintiff's negligible past work history. This objection was sustained by the Court."
"Although it would be speculative to base an award for lost earning capacity on plaintiff's past work history, the preponderance of the evidence indicates that she has sustained a loss of her earning capacity... Plaintiff is entitled to recover for the effect this disability has had on her capacity to earn. These damages are calculated on her ability to earn money, rather than what she actually earned before the injury."
The trial judge then went on to evaluate the testimony of Dr. Shepard, Ms. Babineaux's *1332 orthopedic surgeon, as to her whole body disability and her lower extremity disability. The trial judge also evaluated Ms. Keller's testimony as to Ms. Babineaux's lost wage earning capacity which was based on Dr. Shepard's findings of disability as well as Ms. Babineaux's lack of skills and intellectual ability. Ms. Keller concluded that Ms. Babineaux would be eligible for primarily minimum wage jobs and without fringe benefits. Thus, in the instant case, the trial judge did not find Dr. Payne's testimony inadmissible because he was not qualified. Rather, his testimony was going to be based on an erroneous wage amount, the factual basis of his opinion would be flawed, and consequently, his opinion unhelpful.
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise. LSA-C.E. arts. 702 and 704; Timmons v. Timmons, 605 So.2d 1162 (La.App. 2d Cir.), writ denied, 608 So.2d 195 (La.1992).
As an expert witness, Dr. Payne may give opinions and state the factual bases therefor. LSA-C.E. art. 702. The trial judge may still exclude evidence which he determines is not relevant or which may confuse the issues. State v. Dauzat, 590 So.2d 768 (La.App. 3d Cir.1991).
In many instances, lost earning capacity and lost future earnings are different elements of damages. Earning capacity is not necessarily determined by actual loss; damages may be assessed for what Ms. Babineaux could have earned despite the fact that she may never have seen fit to take advantage of that capacity. Folse v. Fakouri, 371 So.2d 1120 (La.1979); Higginbotham v. Ouachita Parish Police Jury, 513 So.2d 537 (La. App. 2d Cir.1987). The theory is that the injury has deprived Ms. Babineaux of a capacity she would have been entitled to enjoy even though she may never have profited from it. The existence of the injury suffered by Ms. Babineaux places her at a distinct disadvantage in the marketplace of job competition. The loss of earning capacity for which Ms. Babineaux is compensated is not, as argued by Ms. Babineaux, a loss of future earnings, but is the lost future earning capacity. Corliss v. Elevating Boats, Inc., 599 So.2d 434 (La.App. 4th Cir.1992).
Even if Dr. Payne had been permitted to testify as to the value of Ms. Babineaux's loss of earning capacity, the trial judge may have rejected his valuation as not supported by the evidence. Counsel for Ms. Babineaux essentially complains that he was prevented from presenting the full extent of Ms. Babineaux's loss because of the trial judge's refusal to allow Dr. Payne to testify as to the value of her lost earning capacity. Yet, he was able to examine Dr. Shepard as to Ms. Babineaux's disability as a result of the accident and Ms. Keller as to jobs which are within her physical and mental abilities. The trial judge also had evidence of Ms. Babineaux's earning capacity prior to the accident. What Ms. Babineaux earned before and after the injury does not constitute the measure of her ability to earn money. Folse, supra. In the present case, lost future earning capacity and lost future wages are not synonymous. Thus, the trial judge only prevented testimony that would attempt to place a value on Ms. Babineaux's loss of earning capacity based upon a nebulous wage figure.
It is clear that had the trial judge allowed Dr. Payne to testify, he could have fully rejected Dr. Payne's testimony because he is not required to accept the precise value fixed by any expert. The trial judge may instead make an award in an amount to which no expert testifies since the trial judge is empowered to evaluate the weight to be given to each witness' testimony. Valley Electric Membership Corp. v. Wallace, 465 So.2d 986 (La.App. 3d Cir.1985). Moreover, there are myriad of cases involving awards for lost earning capacity where the only expert witness involved was a vocational rehabilitation counselor. In Henry v. National Union Fire Ins. Co., 542 So.2d 102 (La.App. *1333 1st Cir.), writ denied, 544 So.2d 405 (La. 1989), the economic expert who testified on the plaintiff's behalf as to the value of her lost earning capacity made an erroneous assumption as to the plaintiff's potential for making $31,000.00. That court, in disregarding the expert's testimony, stated: "Although the testimony of an expert ... is entitled to weight, it is necessarily based on uncertain future events and is not conclusive." Furthermore, in Hobgood v. Aucoin, 558 So.2d 1285 (La.App. 1st Cir.), writ granted, 563 So.2d 889 (La.1990), affirmed, 574 So.2d 344 (La.1990), the first circuit held that when an expert opinion is based on assumed facts which are not supported by the record in the case, the opinion may be rejected. In order for an opinion of an expert to be valid and to merit much weight, the facts upon which that opinion is based must be facts substantiated by the record. Gardiner v. Commercial Union Insur. Co., 488 So.2d 1331 (La.App. 3d Cir.1986).
We do not find that questions as to Ms. Babineaux's loss of earning capacity were beyond the understanding of the trial judge without the aid of an expert like Dr. Payne.[1] Reviews of lost earning capacity awards should be all the more deferential where, as here, the damages are especially uncertain. Gardiner, supra. Because the trial judge did not allow Dr. Payne to testify does not mean that Ms. Babineaux was not properly compensated for her loss of earning capacity by her lump sum award of $100,000.00. Nevertheless, we find error on the part of the trial judge in excluding the expert testimony on the issue of the value of Ms. Babineaux's loss of earning capacity. He should have admitted it, at least to go to the weight of the evidence. We hold his actions harmless, however.
We have considered the proffered testimony of Dr. Payne. Even if it had been admitted, it would not have had any substantial impact on the judgment of the trial court. The trial judge clearly recognized plaintiff's loss of earning capacity as compensable and included it in plaintiff's general damages award of $100,000.00 for a 5% disability to the body and a 10% disability to the right lower extremity. The facts upon which Dr. Payne's opinion is based are not in fact substantiated by the record.
For the above reasons, the judgment of the trial court is affirmed. Costs are assessed to plaintiff-appellant, Deborah V. Babineaux.
AFFIRMED.
NOTES
[1] Indeed, the trial judge was assisted by Ms. Keller, who was plaintiff's vocational rehabilitation expert.