11 GASKINS, J.
The plaintiff, American Central Insurance Company, appeals the trial court judgment applying principles of comparative fault in apportioning damages arising from the failure of its agent, Boucher & Slack Insurance Agency, Inc., to obtain an uninsured motorist coverage form from an insured. For the following reasons, we reverse the trial court judgment.
FACTS
Boucher & Slack Insurance Agency, Inc. (Boucher & Slack) is an independent insurance agency selling policies for numerous insurers, including the plaintiff, American Central Insurance Company (American). Over the years, Teddy Hanson purchased various policies of automobile liability insurance coverage from American through Boucher & Slack. In June 1991, Mr. Hanson had only one policy, MEZV38473 (73). That policy had bodily injury liability limits of $500,000 and underinsured/uninsured (UM) coverage limits of $50,000. Mr. Hanson executed the UM coverage form specifying that the UM limits would be less than the bodily injury limits.
In August 1993, American installed computer equipment and software called FormLink at Boucher & Slack for the paperless transmission of insurance applications. Boucher & Slack was instructed to obtain signatures on UM rejection forms and to keep those on file at their office. American periodically conducted audits to insure that Boucher & Slack secured the necessary UM forms.
In November 1994, Mr. Hanson sought to add a 1995 pickup truck to his policy. American would only allow four vehicles to be listed on a | ^policy. Because Mr. Hanson already had four vehicles on policy 73, American required that a new policy be purchased. Employees of Boucher & Slack conveyed the new policy application to American by computer. The application indicated that Mr. Hanson wanted bodily injury liability coverage of $500,000 and only $50,000 in UM coverage, as he had on policy 73. However, Boucher & Slack failed to have Mr. Hanson execute a UM rejection form.
American accepted the application and issued a policy of insurance for the fifth vehicle, bearing policy number MEZ043183 (83). American assumed that *525 Boucher & Slack had obtained a signed UM rejection form pursuant to prior instructions and routine procedures. Mr. Hanson was billed as though his coverage on the new policy was the same as on policy 73.
On December 31, 1997, Mr. Hanson’s son Micah, a resident family member of the Hanson household, was seriously injured while a passenger in a vehicle operated by a friend. The friend’s insurance carrier paid its $50,000 bodily injury liability limit and the Hansons made a claim for UM benefits with American on policy 83.
American requested that Boucher & Slack produce the signed UM form on policy 83. Boucher & Slack informed American that the UM form had not been executed by Mr. Hanson. American conceded that without the UM rejection form, the UM limits were equal to the bodily injury limits of $500,000. American paid $420,000 on the UM claim. American then filed suit against Boucher & Slack and its professional liability insurer, l3Employers Reinsurance Company (ERC), to recover $370,000[1] it argued that it was forced to pay due to Boucher & Slack’s failure to obtain the executed UM rejection form. American asserted that Boucher & Slack breached its duty as agent for American.
Boucher & Slack and ERC answered, denying the plaintiffs claims and asserting the affirmative defenses of waiver and es-toppel. Boucher & Slack argued that because the computer program supplied by American did not contain all the information necessary for the company to issue a policy, including information about UM coverage, American waived its right to complain. Boucher & Slack also argued that American’s FormLink software only allowed for four vehicles to be insured on one policy. If American had not imposed this limit, the fifth vehicle could have been placed on the existing policy and would have been subject to the UM form already executed and on file. Boucher & Slack further contended that, if it was found to be liable to American, the amount of recovery should be reduced by the percentage of negligence attributable to American.
A bench trial was held on July 15-16, 2002. The trial court issued reasons for judgment, noting that in issuing policy 83, American did not require Boucher & Slack to show that the UM rejection form had been executed. The court cited the statutory and jurisprudential changes regarding UM rejection forms in recent years and noted that, in light of the | ¿complexities of UM forms, American should have taken more care to see that the form was properly executed.
The court said that most insurance companies require satisfactory proof that a UM rejection form has been executed. According to the court, “Given the ease of obtaining that information by fax, balanced by the seriousness of the issue, American Central has mainly itself to blame for issuing the policy without first viewing a validly executed UM rejection form.”
The court apportioned fault 75 percent to American and 25 percent to Boucher & Slack. A judgment to that effect against American and ERC was signed on June 4, 2003. The defendants appealed.
LIABILITY FOR LOSS
American argues that the trial court erred in assessing it with any percentage of fault. In the alternative, American argued that the trial court assessed too great a percentage of fault. American urges *526 that it was reasonable in relying upon Boucher & Slack, as its agent, to obtain signatures on the UM forms when necessary. American contends that Boucher & Slack breached a duty to obtain the UM rejection form on policy 83. This was Boucher & Slack’s responsibility and its employees were trained to comply with this requirement.
American stated that periodic audits were held and deficiencies in compliance were noted. American points out that this case is not about an ambiguity or a legally deficient UM rejection form. Rather, it involves the total failure to execute the form. According to American, the fact that it | shoes not require Boucher & Slack to submit each form for inspection does not constitute negligent behavior by American. American maintains that Boucher & Slack was required to fulfill its mandate with prudence and diligence.
American asserts that the facts in this matter are not in dispute. Rather it contends that the trial court came to the wrong legal conclusion and therefore no deference should be given to its allocation of fault. These arguments have merit.
The parties argue as to the applicable standard of review in this case. The plaintiff contends that the trial court erred as a matter of law in applying principles of comparative fault to this case, and therefore, the matter should be reviewed de novo. The defendant urges that the manifest error standard of review should be applied to affirm the trial court judgment. We find it unnecessary to determine whether principles of comparative negligence are applicable in this case. We find that, even under the manifest error standard of review, the trial court erred in assessing any degree of fault to American.
This case concerns the duty owed by an agent to its principal. La. C.C. art. 2989 defines mandate as follows:
A mandate is a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal.
La. C.C. art. 3001 provides that:
The mandatary is bound to fulfill with prudence and diligence the mandate he has accepted. He is responsible to the principal for the loss that the principal sustains as a result of the mandatary’s failure to perform.
| Jt is settled law that where an insurer is exposed to liability for policy claims because of action by its agent beyond the agent’s authority or contrary to instructions, the agent is accountable to the insurer for the latter’s loss. American Fire & Marine Insurance Company v. Seymour, 144 So. 775 (La.App. 2d Cir.1932); Richard v. American Federation of Unions Local 102, 378 So.2d 564 (La.App. 3d Cir.1979); Toups v. Equitable Life Assurance, 94-1232 (La.App. 3d Cir.5/3/95), 657 So.2d 142, units denied, 95-2102, 95-2103, 95-2110 (La.12/8/95), 664 So.2d 421; Chiasson v. Whitney, 427 So.2d 470 (La.App. 5th Cir.1983), writs denied, 433 So.2d 179, 180, 183 (La.1983).
The relevant facts in this case are not disputed. American was Boucher & Slack’s principal and charged the company, as its agent or mandatary, with correctly completing applications for insurance policies and transmitting the applications by computer to American. In addition, Boucher & Slack was charged with securing valid UM forms, signed by the insured, and with maintaining the executed forms in the files at Boucher & Slack’s office. Boucher & Slack admits that in this case, it failed to fulfill its duty as American’s agent. Because of that failure, American was required to pay $370,000 on Mr. Hanson’s UM claim that it would not have been liable for had Boucher & Slack ful *527 filled its mandate with prudence and diligence. Accordingly, under La. C.C. art. 3001, Boucher & Slack is responsible to American for this loss.
We reject arguments by Boucher & Slack that American is partially responsible for the risk it suffered. Boucher & Slack contends that, because |7American audited their records and sometimes found deficiencies in the maintenance of the required UM forms, American was somehow at fault in this matter. We are also not persuaded by Boucher & Slack’s contention that American “assumed the risk” in this matter by failing to have the company submit proof of the completion of UM forms with each insurance application, a practice it contends is standard in the insurance industry. Based upon these factors, Boucher & Slack argues that American has waived its complaint or is estopped from recovering for a clear breach of duty by Boucher & Slack.
Regarding the periodic audits, the failure of Boucher & Slack to perform in other instances has no bearing on the matter at hand. However, it does reinforce the fact that Boucher & Slack was fully aware of its obligation to American, accepted that obligation, and, in this instance, failed to fulfill its duty.
Further, American was not at fault, but rather had the right as a principal to delegate to Boucher & Slack, as its agent, the responsibility for securing the signed UM forms and keeping them on file at the Boucher & Slack office. The agreements between other insurance companies and their agents have no bearing upon the agreement at issue here. The record shows that Boucher & Slack accepted the responsibility from American of securing the completed UM forms and maintaining them in their files. In this instance, Boucher & Slack breached that duty and is solely laible for American’s loss.
|8Our conclusion that Boucher & Slack is liable to American for the loss sustained by its failure to secure an executed UM form is supported by the jurisprudence. In Toups v. Equitable Life Assurance, supra, an insurance agent did not write down all the information that he was given in an application, resulting in the insurer, paying a claim it would not otherwise have covered. The court found that the agent was liable to the insurer for his failure to comply with the insurer’s instructions.
In Richard v. American Federation of Unions Local 102, supra, the local union, as agent for Blue Cross Insurance Company, improperly certified that Richard was eligible for health insurance. Only union members who were actually working could be covered. Richard was not working due to a disability and therefore not eligible for health insurance. The court allowed Richard to recover on the insurance policy, but granted a third party demand by Blue Cross against the local union. According to the court, the union was the agent of Blue Cross, knew the requirements for insurance eligibility, and certified Richard as eligible for coverage when he was not. Because the union acted beyond its authority and contrary to the instructions of its principal, Blue Cross, it was found to be liable to the insurer.[2]
An interesting contrast to the facts present here is found in Gardiner v. Commercial Union Insurance Companies, 488 So.2d 1331 (La.App. 3d Cir.1986). In Gardiner, the insured’s signature was forged on a waiver of UM coverage. There was no proof of who signed the form. The court | flfailed to find the agency liable to the insurer because it was not established that the insurer ever required that its agents verify signatures of policy *528 holders electing lower limits of UM coverage. Conversely, in the present matter, it is undisputed that Boucher & Slack knew that it was required to obtain validly executed UM forms and to maintain them in their files.
Accordingly, we find that Boucher & Slack was totally at fault in failing to obtain the required form lowering Mr. Hanson’s UM limit to $50,000, rather than maintaining it at the bodily injury limit of $500,000. Therefore, Boucher & Slack and its professional liability insurer, Employers Reinsurance Company, are liable to American for the total loss caused by this breach of duty, $370,000.
CONCLUSION
For the reasons stated above, we reverse the trial court judgment which assessed American with 75 percent fault in the failure of its agent to secure a validly executed form lowering the UM limits of its insured on the policy at issue here. We find that the defendant, Boucher & Slack Insurance Agency, Inc., was solely at fault in failing to secure the form. Boucher & Slack is liable for the loss sustained by its principal, American Central Insurance Company. We award judgment to American Central Insurance Company against Boucher & Slack Insurance Agency, Inc. and its professional liability insurer, Employers Reinsurance Company, in the _[i¡)amount of $870,000, with legal interest from the date of judicial demand. Costs are taxed to the defendants.
REVERSED AND RENDERED.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, GASKINS, DREW, and LLOLEY, JJ.
Rehearing denied.

. American paid $420,000 on the claim, but it only sought to recover $370,000 from Boucher & Slack, acknowledging that it would have had to pay the difference, $50,000, even if the UM waiver had been executed.

. See also American Fire & Marine Insurance Company v. Seymour, supra, in which an agent was found to be liable for selling an insurance policy without authorization.